**UNITED STATES ex rel. MILLARD v. TUTTLE, Commissioner of Immigration.**

No. 20360.

District Court, E. D. Louisiana, New Orleans Division.

July 16, 1930.

Max M. Schaumburger, of New Orleans, La., for relator.

E. E. Talbot, U. S. Atty., of New Orleans, La., for respondent.

DAWKINS, District Judge.

Petitioner seeks, by writ of habeas corpus, to be discharged from custody under a warrant of deportation, issued by the Department of Immigration. The warrant, dated December 8, 1927, charged that the relator had been convicted of a crime involving moral turpitude, committed within five years after his entry into the United States. He was not apprehended until recently in the city of New Orleans. His petition alleges that the Department erred as a matter of law in the following respects: (1) In not finding that prescription or limitations had run before the charge was filed in the state court, and therefore that the proceedings were null and void; (2) in not holding that the said offense could not support his deportation because it was "not judicially determined or established until more than five years after his entry," December 9, 1918, the bill of information having been filed on April 19, 1924; (3) in not finding that the offense which charged him with incumbering mortgaged property under the laws of California did not involve moral turpitude, as required by the Immigration Act of Feb. 5, 1917.

1. As to the contention that the offense for which petitioner was prosecuted under the state law had prescribed, I do not think this is an issue which this court can consider in a habeas corpus proceeding. The writ, as has often been said, cannot serve the purposes of an appeal or review, and the plea of limitations being one which the petitioner could have urged in his trial, or on motion in arrest of judgment, was waived by the plea of guilty which the record shows he entered. No authority has been cited and I know of none which supports the assertion that the whole proceeding in the state court was rendered null and void by the mere expiration of the prescriptive period under the state law.

2. In support of the second proposition, counsel cites the case of Hughes v. Tropello, 296 F. 306, 309, in which the Court of Appeals for the Third Circuit used some language indicating that the alien should not only have committed the offense, but that he must have been convicted and sentenced within five years after his entry in order to be deported under section 19 of the Act of Feb. 5, 1917 (U. S. Code, title 8, § 155 [8 USCA § 155]). However, in that case, the alien arrived in the United States on November 12, 1915, and after examination was ordered deported "on the ground that he was feeble minded and likely to become a public charge," but was later permitted to enter, upon giving bond. On April 19, 1919, a warrant of arrest was issued and he was taken into custody on the charge that he was in the United States in violation of the Immigration Act of 1917, for the same reason; that is, he was feeble minded at the time of his entry

and likely to become a public charge. The final order of deportation was not issued until April 5, 1921. It was held that inasmuch as the order had not been entered within five years after entry "the power of deportation was exhausted. * * * " The court took occasion to analyze the various sections of the statute as well as the clauses of section 19, and although unnecessary because no such issue was involved, in discussing the clause authorizing deportation of an alien sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, said:

"Not only so, but the fact, the offense which is the sole foundation of the right of deportation, must be established by some proceeding, not only commenced, but concluded (that is, found to exist), within the period of five years after entry."

This conclusion appears to have been based upon the proposition that section 19 of the act, as quoted by that court, says:

" 'That at any time within five years after entry, any alien (specifying the various classes unlawfully entering or found in the United States) shall, upon a warrant of the Secretary of Labor, be taken into custody and deported.' "

However, in my judgment, with all due respect, the section in question cannot be treated in any such fashion for the reason that between the opening clause, "That at any time within five years after entry, any alien," etc., and the concluding command, "shall, upon a warrant of the Secretary of Labor, be taken into custody and deported," there are a number of clauses which clearly provide different periods of limitations and others which are without limitation. For instance, the very clause dealing with the commission of a crime in which a sentence of one or more years has been imposed, provides that where the alien has been sentenced more than once to such a term of imprisonment, committed "at any time after entry," he may be deported, and in the last clause just preceding the command that all such classes shall be taken into custody and deported, it is provided that "at any time *within three years after entry*, any alien who shall have entered the United States by water at any time or place other than as designated by immigration officials," etc., shall be deported. With respect to the class with which the court was dealing in the Tropello Case, the section provides that "any alien who within five

years after entry becomes a public charge from causes not affirmatively shown to have arisen subsequent to landing," and while I am not prepared to agree with the reasoning of that decision, I can see a distinction from the present one in that the issue of whether or not the alien had become a public charge, because of mental deficiency, had to be provoked and established through departmental proceedings; whereas, in cases involving the commission of crime the guilt has to be established by some court, state or federal, and the Department cannot act until the alien has been "sentenced to imprisonment." As pointed out in the Tropello Case, all that is necessary thereafter is that the Secretary of Labor shall take the alien into custody and deport him. That case also recognized "that the term of imprisonment might extend far beyond the five-year limit," but concluded that this was specifically covered by one of the provisos of section 19, that "any such alien convicted as aforesaid, shall not be deported, until after the termination of his imprisonment." The cases cited in support of the Tropello Case arose under the act of 1907 (34 Stat. 904, § 20), which declared that "any alien who shall enter the United States in violation of law [etc.], shall, upon the warrant of the Secretary of Commerce and Labor, *be taken into custody and deported* to the country whence he came *at any time within three years after the date of his entry into the United States.*" And it was held that the whole proceeding had to be completed within three years in order to render the vessel upon which he was brought to this country liable for his transportation. However, the Act of Feb. 5, 1917, in the clause dealing with aliens of the class of petitioner, declares: "except as hereinafter provided, any alien who is hereafter sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, *committed within five years after the entry of the alien to the United States*, or who is hereafter sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry," etc. Clearly the provision is that the alien shall be deported upon conviction and sentence of a crime of that nature *committed* within five years after the entry into the United States, not that he "shall be taken into custody and deported" within that time, as directed in the act of 1907. The same reasoning indulged in by the court in the Tropello Case, that is, that the alien could not.

be deported until after service of the sentence, is equally applicable to the charge and conviction. The Immigration Department has no control over the action of the state authorities or of the federal courts in instituting proceedings for offenses committed within the prescribed period, and therefore cannot act until the sentence has been imposed and served. What has just been said is also applicable to the argument that the bill of information was not filed in the state court until after the expiration of the five years from the date of entry. I think it sufficient under the act of 1917, if the defendant has been convicted and sentenced for an offense *committed* within five years. It has been specifically held that the limitation of five years in the first clause of section 19 has no application to aliens advocating or teaching the unlawful destruction of property covered by a subsequent clause in the same section. Guiney v. Bonham (C. C. A.) 261 F. 582, 8 A. L. R. 1282. The expression, "except as hereinafter provided," at the beginning of the clause covering deportation of aliens convicted of crimes involving moral turpitude, evidently refers to one of the provisos in the same section that "the provision of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned, nor shall such deportation be made or directed if the court, or judge thereof sentencing such alien for such crime shall, at the time of imposing judgment or passing sentence or within thirty days thereafter, due notice having first been given to representatives of the State, make a recommendation" that he shall not be deported.

 I think counsel is correct in the contention that the court is not bound by the finding of the Department that the crime involved moral turpitude, for this is a question of law. But the bill of information in this case charged that the defendant executed the second chattel mortgage encumbering mortgaged property, "designing and intending to defraud," and to which offense, as charged, petitioner pleaded guilty. The only evidence offered to dispute that proposition is his own testimony, contradicting the solemn judicial admission, which he thus made, that he did not intend any fraud and that the debt was subsequently paid. Of course, it would make no difference that payment was afterwards made, if at the time he committed the act with a fraudulent purpose. The Department having shown a prima facie case of conviction of an offense with intention to defraud, which on its face I think implies moral turpitude, the burden was then upon petitioner to show by sufficient evidence that it did not involve the circumstances denounced by the act of 1917. This I think he failed to do in view of the contradiction involved in the admission of his plea as against his lone statements made as a witness. He proceeded to serve some eighteen months of his sentence in the penitentiary, and if he had been innocent it would seem that means could have been found either to prevent execution of sentence or to convince the court rendering the judgment, that no crime had been committed. I think it hardly necessary to cite authority to support the proposition that the commission of a fraud involved moral turpitude.

Taking the case as a whole, I am of the opinion that the ruling of the Department is correct and the petitioner should not be discharged. He will therefore be committed for deportation according to law.