(No. 48344.—

*In re* JOHN M. LEONARD, JR., Attorney, Respondent.

*Opinion filed October 1, 1976.*

WARD, C.J., took no part.

William J. Martin, Ltd., of Chicago, for respondent.

Mary M. Conrad, of Chicago, for the administrator of the Attorney Registration and Disciplinary Commission.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

This is a disciplinary proceeding pursuant to Supreme Court Rule 751 (Ill. Rev. Stat. 1975, ch. 110A, par. 751) against respondent, John M. Leonard, Jr., for engaging in conduct unbecoming a member of the legal·profession, and involving dishonesty, fraud, deceit, misrepresentation and moral turpitude. The Hearing Board of the · Attorney Registration ·and Disciplinary Commission unanimously recommended that respondent be suspended from the practice of law for a period of three years. On consideration by the Review Board, with one member dissenting, the recommendation was modified. with the addition that the suspension should be for a period of three years and until further order of the court. Respondent contests the propriety of that sanction.

On January 30, 1974, a 21-count criminal indictment, No. 74 CR 75, was returned and filed in the United States District Court, Northern District of Illinois, Eastern Division, against respondent and certain other named defendants. Following plea negotiations, respondent entered a plea of guilty on January 2, 1975, to counts 1 and 21 of the indictment, which charged the offenses of knowingly, wilfully and unlawfully conspiring to commit offenses against the United States, to-wit: using the United States mail to scheme and defraud, and utilizing facilities in interstate commerce to promote the unlawful activity of bribery; and, also, unlawfully assisting in the preparation of fraudulent Federal corporate income tax returns; in violation of title 18, section 371, and title 26, section 7206(2), United States Code. On February 18, 1975, respondent was convicted and sentenced to three years imprisonment on each of counts 1 and 21, the sentences to run concurrently, but the execution of the sentences was suspended and respondent was placed on probation for three years and ordered to pay a fine of $15,000. All other

counts of the indictment were dismissed on the motion by the government.

Respondent's conviction resulted from his involvement in bribery payments allegedly made to the late Paul Powell, as Secretary of State, in connection with a State contract for the manufacturing of motor vehicle license plates. In February 1969, an out-of-State firm was awarded the contract for manufacturing the license plates. James P. Manning, who acted as a consultant to Powell on license plate matters, also had a manufacturer's representative contract with this out-of-State firm, which entitled him to a sales commission on each license plate sold to the State. Respondent was recruited by Talmadge Rauhoff, a co-defendant in the indictment, to organize Structolite, Inc., as an Illinois corporation to act as manufacturer's representative. Manning, who became one of the beneficial owners of the stock of Structolite, assigned his commission contract to the corporation. A portion of the proceeds of the deposits in Structolite's account, which were derived from commission payments, would be withdrawn in the form of purported salary checks which would then be converted into cash for the bribery payments. Respondent organized the corporation under the laws of Illinois, knowing full well that a portion of its function would be to funnel a substantial amount of money to Powell as bribes in connection with the license plate contract. In addition to signing 10 to 20 checks on the Structolite account, respondent assisted in cashing checks on two occasions at a Chicago bank and the cash generated therefrom was used as bribes. In reference to the preparation of a fraudulent income tax return, the facts show that for a period of time respondent maintained the checkbook and corporate records of Structolite. He furnished these records to the accountant who prepared the income tax form, knowing that they reflected a false amount of compensation paid to a member of the corporation, since

the compensation paid was substantially less than indicated. The difference between the amount of compensation recorded and that actually paid provided cash for the bribery payments.

At the proceedings before the Hearing Board, respondent testified in mitigation to the circumstances surrounding his involvement in the offenses. Respondent stated that he did not know Paul Powell other than having casually met him in a reception line at a cocktail party. During his organization of Structolite, he had no communication of any type with Powell, except for sending the articles of incorporation to Powell as Secretary of State. He explained that Talmadge Rauhoff was an acquaintance of long standing and that he and his law firm did legal work for Rauhoff. In August 1969, Rauhoff asked respondent to organize Structolite. Respondent expressed the belief that Structolite was not organized merely to be a dummy corporation, but was initiated with the thought of eventually entering the plastic business. In this regard, respondent and his firm assisted Structolite in the purchase of a plastics company and a tract of real estate. For these services, including the incorporation, which covered a period of time from 1969 to 1971 or 1972, respondent's firm charged Structolite approximately $4000. Respondent testified that other than these fees, he received none of the proceeds from Structolite, and at no time did he give Powell or anyone on his behalf any money in connection with Structolite. He further stated that in the course of entering his guilty plea he agreed to truthfully relate his knowledge of the circumstances surrounding this case to the United States attorney.

During cross-examination, respondent admitted he was not only the attorney for Structolite, but also was the corporate secretary, a director and a consultant to the corporation. He maintained the books and records for Structolite and was authorized to sign checks. He stated,

however, that he did not receive compensation for the positions he held with the corporation.

On questioning by the Hearing Board, respondent related that he drew somewhere between 10 and 20 checks over a one-year period of time, while three or four times that many were issued by the corporation. He admitted that he knew certain checks were written for the purpose of generating money to be paid as bribes to Powell. Respondent recalled a conversation at a Chicago hotel among Rauhoff, an employee who worked for Powell, and himself, wherein they discussed the payment of money by Structolite to Powell. He also recalled a telephone conversation with Rauhoff when the subject was again discussed. He directed Rauhoff not to pay the money, but he did nothing to stop him from doing so. In response to a specific question by the Hearing Board, respondent's attorney stated that Structolite was no longer in business.

At the proceedings before the Hearing Board, respondent presented 11 witnesses, the majority of whom were members of the bench and bar, who testified to his good character, morals, ethics, and civic endeavors. Eight of these witnesses, however, could not deny that respondent's conduct was either unbecoming a member of the legal profession or brought the profession into disrepute. Additionally, respondent presented 65 letters from members of the bench and bar and lay persons, including letters from those persons who had appeared as witnesses, attesting to his good character. He also introduced a certified copy of the transcript of the sentencing proceedings in Federal court, calling attention to the comments of the United States prosecuting attorney relative to his cooperative conduct in related litigation.

The Hearing Board found that the acts of the respondent, as disclosed by the indictment, established by the finding of guilt and admitted by him in his testimony, constituted conduct involving moral turpitude, dishonesty,

fraud and deceit, brought the legal profession into disrepute, and cast doubt upon the integrity of the bar. The Review Board affirmed the findings and conclusions of the Hearing Board.

Respondent maintains that the recommended suspension of three years is excessive in light of his minimal involvement in the crime, coupled with the evidence he submitted in mitigation. In support of this contention he cites various other disciplinary cases before this court. He compares the conduct involved in those cases with his conduct and points out that in those cases the court imposed a less severe sanction. In reviewing the cases, however, we find that not one is sufficiently analogous to the present situation to be determinative of the appropriate discipline which should be imposed in this case. Moreover, it must be noted that "[t] he doctrine of *stare decisis* cannot really be applied to the particular discipline meted out in any particular case, as the conduct of each respondent must be judged individually," and "the discipline in each case must turn upon the particular factual situation presented." *In re Nesselson,* 35 Ill. 2d 454, 461.

While respondent contends that his involvement in the crime was minimal in nature, his testimony before the Hearing Board indicates otherwise. His actions were not merely an isolated aberration but a knowing and wilful participation in the bribery of a State official, which continued over a period of one year. Respondent drafted several checks, indicating in the checkbook records that the checks were issued for the purpose of salaries, although he knew the proceeds would be used as bribes. Twice he assisted a member of the corporation in negotiating drafts which facilitated the payment of bribes. Finally, he gave the corporate records to an accountant for preparation of the corporation's income tax return, knowing they reflected false entries. The fact that respondent received no personal profit from his involvement, other than the fees charged by his firm, does not lessen his knowing and wilful

participation. Clearly, he was not an innocent bystander unwittingly thrust into criminal actions.

The argument that respondent, as an attorney, may have mistaken his loyalty to his client and overlooked the duty to his profession is without merit. In his testimony before the Hearing Board, respondent related that his former client, Talmadge Rauhoff, was convicted of all 21 counts of the indictment following a jury trial and sentenced to three years imprisonment. While hindsight admittedly reveals that respondent's actions in aiding Rauhoff to carry out the bribery payments were not in his client's best interests, respondent knew at the time the payments were first discussed that such conduct could subject his client to criminal prosecution and, if convicted, to imprisonment. As an attorney, respondent had a clear duty to dissuade his client from participation in criminal conduct, and if the client refused, to withdraw his services in that regard.

In further support of the contention that his involvement was minimal, respondent points to the fact that the Federal district judge who sentenced him suspended execution of the sentences and placed him on probation. This argument, however, has little merit. A reading of the transcript of the sentencing proceeding discloses that the judge felt a certain constraint in sentencing respondent, because a co-defendant who was a central actor in the bribery transaction had previously been sentenced to probation.

> " 'The disbarment of an attorney is the destruction of his professional life, his character, and his livelihood. [Citations.] The court should, therefore, disbar in moderation. [Citation.] Likewise the same considerations obtain in the application of a three-year suspension rule. A removal of an attorney from practice for a period of years entails the complete loss of a clientele with its consequent uphill road of patient waiting

to again re-establish himself in the eyes of the public, in the good graces of the courts and his fellow lawyers. In the meantime, his income and livelihood have ceased to exist. \*\*\*' " *In re Fisher,* 15 Ill. 2d 139, 154-55.

The final responsibility for determining the appropriate discipline rests with the court. (*In re Sherman,* 60 Ill. 2d.590, 593.) While we are not unmindful of respondent's previous good character and reputation, as attested to by members of both the bench and bar, we must also consider the severity of criminal involvement, which was manifested by his own testimony. Moreover, the majority of witnesses who testified on respondent's behalf could not deny, when directly confronted, that his conduct was either unbecoming a member of the legal profession or brought the profession into disrepute.

We recognize, however, as was noted in the dissent filed by a member of the Review Board, that our disciplinary system must not become mechanistic, ignoring the significance of mitigating factors. Except for respondent's involvement in the present situation, his record of personal and professional service exemplifies a commitment and an awareness of the highest ethical standards. It is undisputed that respondent ceased the practice of law when he resigned from his firm on February 18, 1975, the date of his Federal conviction. This voluntary curtailment of his practice, with its resulting loss of income, illustrates his recognition of the ignominy of his conviction.

The purpose of a disciplinary proceeding is to maintain the integrity of the profession, safeguard the public and protect the administration of justice. (*In re Smith,* 63 Ill. 2d 250, 256.) In determining the appropriate discipline, however, this court should not impose a sanction which will benefit neither the public nor the legal profession. Reviewing the facts, we are of the opinion that the proper sanction is to suspend respondent from the

practice of law for a period of three years. The suspension will be considered as having begun on February 18, 1975, the date on which he voluntarily withdrew from the practice of law.

*Respondent suspended.*

MR. CHIEF JUSTICE WARD took no part in the consideration or decision of this case.