The **STATE BAR OF TEXAS**, Relator,

v.

Honorable **Wyatt H. HEARD**,
Judge, Respondent.

No. B–9033.

Supreme Court of Texas.

July 30, 1980.

Rehearing Denied Sept. 12, 1980.

Jerry Zunker, Gen. Counsel, Steven D. Peterson, First Asst. Gen. Counsel, State Bar of Texas, Austin, for relator.

Andrew L. Jefferson, Jr., Houston, for respondent.

SPEARS, Justice.

In this original proceeding, relator, the State Bar of Texas, prays this court to issue a writ of mandamus compelling respondent, Judge Wyatt Heard, to render an order suspending the license to practice law of Ronald B. Pruitt during the pending appeal from Pruitt's conviction for conspiracy to commit mail fraud and substantive mail fraud. We conditionally grant the writ.

On April 30, 1979, Pruitt was convicted by a jury in a United States District Court in Florida of one count of conspiring to commit mail fraud (Title 18 U.S.C. § 371) and six counts of substantive mail fraud (Title 18 U.S.C. § 1341). Pruitt was sentenced to three years imprisonment on each count, to be served concurrently. He then perfected his appeal to the United States

Court of Appeals, Fifth Circuit, and that appeal is now pending.

In July of 1979, the State Bar of Texas filed a complaint in Judge Heard's court pursuant to § 16 of the State Bar Act, Tex.Rev.Civ.Stat.Ann. art. 320a–1 (Vernon), seeking the suspension of Pruitt's law license during appeal of the conviction and further seeking disbarment upon proof that the conviction was final. Thereafter, the State Bar filed a "Motion for Summary Judgment" which asked the court for an interlocutory order suspending Pruitt's license during the pendency of his appeal. The respondent, Judge Heard, denied the motion, stating that the denial was without prejudice to reassert the motion if and when the criminal conviction became final on appeal.

The State Bar Act[1] was passed in aid of this court's exercise of its inherent power to regulate the practice of law.[2] Section 16 of that act provides in pertinent part:

Sec. 16. (a) No attorney shall be suspended from practice, except by the attorney's concurrence under an order of suspension entered by the grievance committee, until such attorney has been convicted of the charge or charges for disbarment pending against him or her in a court of competent jurisdiction. *Provided, however, that on proof of conviction of an attorney* in any trial court of competent jurisdiction *of any felony involving moral turpitude* or of any misdemeanor involving the theft, embezzlement, or fraudulent misappropriation of money or other property, *the district court of the county of the residence of the convicted attorney shall enter an order suspending the attorney from the practice of law during the pendency of any appeals from the conviction.* An attorney who has been given probation after the conviction, whether adjudicated or unadjudicated,

1. Section 16(a) is substantially identical to § 6 of the prior State Bar Act as it existed before its reenactment on June 11, 1979. *Compare* Tex.Rev.Civ.Stat.Ann. art. 320a–1, § 16(a) (Ver-

non) *with* 1969 Tex.Gen.Laws, ch. 134, § 6, at 364.

2. *See Order of the Supreme Court of Texas*, 1A Tex.Rev.Civ.Stat.Ann. 43 (Vernon Supp.1979).

shall be suspended from the practice of law during the probation. On proof of final conviction of any felony involving moral turpitude or any misdemeanor involving theft, embezzlement, or fraudulent misappropriation of money or other property, the district court of the county of the residence of the convicted attorney shall enter a judgment disbarring him or her.

.        .        .        .        .

(b) *In any action seeking to disbar an attorney* for acts made the basis of a conviction for a felony involving moral turpitude or a misdemeanor involving theft, embezzlement, a fraudulent misappropriation of money or other property, *the record of conviction shall be conclusive evidence of the guilt of the attorney for the crime of which he or she was convicted.* (emphasis added).

This statute gives the district court no discretion and upon proof of the conviction of a felony involving moral turpitude, the court had a mandatory duty to render an order suspending Pruitt's license to practice law during the pendency of his appeal.

■ Respondent Heard argues that a writ of mandamus is not an appropriate remedy here for several reasons. First, he contends that Pruitt, who has not been made a party to this proceeding, is a necessary party, without whom relief cannot be granted, since Pruitt's rights would be directly affected by the issuance of the writ. We overrule this contention. In *Dick v. Kazen*, 156 Tex. 122, 292 S.W.2d 913, 916–17 (1956), an election case, we responded to a similar argument, saying:

[T]he application presents only the question of ascertaining whether or not the judge of the district court has refused to do an official act involving only official power and duty arbitrarily laid upon him by law, and the performance of which, if it be so required, could in no way comprehend the impairment of any legal right, which might be asserted to circumvent such legal requirement. Where application for a writ of mandamus is sought to compel a trial judge to do what is alleged

to be a duty mandatorily enjoined upon him by law, and as to which, if it thus exists, he could have no discretion, a case of this nature, which has been held to require parties litigant adverse to the relator to be brought into the proceeding, is not presented.

The cases of *Williams v. Wray*, 123 Tex. 466, 72 S.W.2d 577 (1934) and *Lanford v. Smith*, 128 Tex. 373, 99 S.W.2d 593 (1936), cited by respondent Heard, are distinguishable. In those cases there was a *judicial* function involved that affected the rights of an absent party. In *Williams*, a mandamus was sought to compel the district judge to proceed to trial in a cause. In *Lanford*, the court of civil appeals reversed the trial court's order overruling a plea of privilege, but instead of rendering judgment that the case be transferred, the court of civil appeals remanded the case for a new venue trial on the theory that it did not appear from the record that the facts had been fully developed. In both cases, this court denied a writ of mandamus on the grounds that there were absent parties whose rights would be injuriously affected by the issuance of a mandamus.

In the case before us, however, no judicial act is involved; rather the act required is merely ministerial. In *Commissioner of the General Land Office v. Smith*, 5 Tex. 471, 479 (1849) this court observed:

The distinction between ministerial and judicial and other official acts seems to be that where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial; but where the act to be done involves the exercise of discretion or judgment in determining whether the duty exists, it is not to be deemed merely ministerial.

In the present case no discretion or judgment was necessary for the trial court to follow the clear provisions of section 16(a) of the State Bar Act. We reaffirm the rule in *Dick v. Kazen, supra*, 292 S.W.2d at 917, that adverse parties in the litigation need not be parties in the mandamus action

which involves only an absolute and rigid duty of the trial court to follow a fixed and prescribed course not involving the exercise of judgment or discretion. In such an instance the writ, if granted, could only run against the judge.[3]

█ Respondent next contends that mandamus will not lie until the State Bar has first made application to the court of civil appeals. He argues that the State Bar is merely asking this court to order the trial judge to enter a judgment, a matter over which the court of civil appeals has concurrent jurisdiction under Tex.Rev.Civ.Stat. Ann. art. 1824 (Vernon). We do not agree. The State Bar asks us to order Judge Heard to vacate his order denying the interlocutory order and to render an order suspending Pruitt's license pending appeal of his conviction. Although the State Bar captioned the relief it sought in the trial court a motion for summary judgment, it is clear from reading the instrument that the State Bar was not asking, at that point, for summary judgment. Rather, it was a motion to invoke the special remedy of suspension provided for by statute.[4] We look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of title given to it. Tex.R.Civ.P. 71 (Vernon 1979). *See Rose v. State*, 497 S.W.2d 444 (Tex.1973).[5] The State Bar's motion for an order immediately suspending Pruitt's license sought an interlocutory order while the case for disbarment was pending. This relief is not within the pur-

view of article 1824. The mandamus power of the court of civil appeals is limited to directing the trial court to proceed to trial and judgment and does not include the power to tell that court what judgment it should enter. *Weber v. Snell*, 539 S.W.2d 363, 367 (Tex.Civ.App.—Houston [1st Dist.] 1976). Nor does the court of civil appeals have jurisdiction to order the trial court to set aside a void interlocutory order. *Crane v. Tunks*, 160 Tex. 182, 328 S.W.2d 434, 438 (1959); *Chapa v. Betts*, 534 S.W.2d 446, 447 (Tex.Civ.App.—Austin 1976).

█ Respondent Heard next argues that mandamus will not lie because this court does not have jurisdiction to correct an incidental ruling made by the trial court in the course of orderly trial proceeding when there is an adequate remedy available. He further urges that the State Bar may not prosecute an appeal from the order denying a motion for summary judgment; instead, he says that the State Bar should proceed to trial in the disbarment suit and appeal from any adverse ruling.

█ As we have noted, the State Bar's motion was not in the nature of a summary judgment, but was a motion praying for an interlocutory order specifically provided for and required by statute. Except in rare instances, this court will not issue writs of mandamus to control or correct rulings on motions, which are merely incidental to the normal trial process, when an adequate remedy by appeal exists for correction of any erroneous ruling. *State ex rel. Pettit*

---

3. The record in this case discloses that the attorney representing respondent Heard is the same attorney representing Pruitt in the trial court. All matters filed in this mandamus proceeding were furnished to Pruitt's counsel whose brief and argument sought to advance Pruitt's interests in the proceeding as much as Heard's.

4. The State Bar's motion for summary judgment prayed that "the court grant this Motion for Summary Judgment, and that *this Interlocutory Judgment be entered* in favor of the Plaintiff [State Bar] and against Defendant [Pruitt], *suspending the law license* of the Defendant during the pendency of any appeal from the convictions cited herein, *and that upon proof of final conviction, the Defendant be, by this Court, disbarred.* Plaintiff further

prays for such other and further relief to which it may show itself entitled, including all costs of court." (emphasis added).

In *Freedson v. State Bar of Texas*, 600 S.W.2d 349 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ pending), the State Bar sought the same relief by summary judgment. Since use of the vehicle of summary judgment was apparently not challenged by the appellant, the court did not write on the question and the point is not raised in the pending application.

5. In *Rose* an instrument captioned a Motion Requesting Court to Amend Its Judgment, filed long after the county court's judgment became final, was treated by this court as an action in the nature of an equitable bill of review.

*v. Thurmond*, 516 S.W.2d 119, 121 (Tex. 1974); *Pope v. Ferguson*, 445 S.W.2d 950, 954 (Tex.1969). We will, however, issue a writ of mandamus directing a trial judge to enter or set aside a particular judgment or order when the directed course of action is the only proper course and the petitioner has no other adequate remedy. *State ex rel. Pettit v. Thurmond, supra; Pope v. Ferguson, supra*. Under those circumstances, mandamus will lie when there is a clear abuse of discretion as in *Stewart v. McCain*, 575 S.W.2d 509 (Tex.1978); *Texarkana Memorial Hosp., Inc. v. Jones*, 551 S.W.2d 33 (Tex.1977); *Houdaille Indus., Inc. v. Cunningham*, 502 S.W.2d 544 (Tex.1973); *Maresca v. Marks*, 362 S.W.2d 299 (Tex. 1962). Likewise, in the absence of another adequate remedy, mandamus will lie when a district court fails to observe a mandatory statutory provision conferring a right or forbidding a particular action. In these instances the trial court's discretion is not invoked, and its failure to comply with the mandatory provision renders its order or judgment void. *State Bd. of Ins. v. Betts*, 158 Tex. 612, 315 S.W.2d 279, 280 (1958); *State v. Ferguson*, 133 Tex. 60, 125 S.W.2d 272, 274 (1939); *see State ex rel. Pettit v. Thurmond, supra*, at 121, 123. In *Stakes v. Rogers*, 139 Tex. 650, 165 S.W.2d 81, 82 (1942) we stated:

A writ of mandamus will lie to correct the action of a trial judge where he acts in abuse of his discretion, or in violation of his clear duty under the law, and there is no adequate remedy by appeal.

In the case before us, the statute provides that upon "proof of [final] conviction of an attorney . . . of any felony involving moral turpitude . . . the district court . . . *shall* enter an order suspending the attorney from the practice of law during the pendency of any appeals from the conviction." (emphasis added). This provision calls for no discretion. It calls for no judicial decision. It is clear and unambiguous, and it mandates what the district court must do upon application of the State Bar.

Moreover, because the order complained of is an interlocutory order, denying the motion to suspend Pruitt's license, appeal is not available to the State Bar. Therefore, the State Bar would be required to wait until the federal appeal is decided and the disbarment suit is heard before it could appeal the failure of respondent to suspend Pruitt's license. This requirement would effectively repeal § 16(a) of the State Bar Act, however, because the question of suspension would be rendered moot once Pruitt's appeal is decided. If his appeal was unsuccessful, his federal conviction would be final, and the trial court must disbar him.[6] On the other hand if Pruitt's appeal is successful and no other grounds exist that would require disbarment, the trial court must restore his license. In either event, the dispute over the suspension would be meaningless.

Considerations raised by relator's affidavits to the effect that the conviction is likely to be reversed by the Fifth Circuit and that the trial court in Florida believed Pruitt's guilt to be a "very close case" are immaterial. The clear mandate is grounded in sound public policy. The practice of law is a license, not a right, and only persons of good moral character and fitness are permitted to practice law in the courts of this state. An attorney who is convicted of the enumerated crimes cannot hold the confidence of the public or the profession as long as the conviction stands.

The final question we address is whether the conviction of Pruitt was for a crime involving moral turpitude. Pruitt was convicted on counts of both conspiracy to commit mail fraud and substantive mail fraud. A specific intent to defraud has been held a necessary element for the conviction of mail fraud. *Williams v. United States*, 278 F.2d 535, 537 (9th Cir. 1960). Moreover, any crime of which fraud is a

---

**6.** As will be discussed later, mail fraud and conspiracy to commit mail fraud are crimes involving moral turpitude.

necessary element is a crime involving moral turpitude. *Jordan v. DeGeorge*, 341 U.S. 223, 227, 71 S.Ct. 703, 705, 95 L.Ed. 886 (1951). In *Jordan* the Supreme Court stated:

> The term "moral turpitude" has deep roots in the law. The presence of moral turpitude has been used as a test in a variety of situations, including legislation governing the disbarment of attorneys and the revocation of medical licenses.

> . . . . .

> In deciding the case before the Court, we look to the manner in which the term "moral turpitude" has been applied by judicial decision. Without exception, federal and state courts have held that a crime in which fraud is an ingredient involves moral turpitude. (footnotes omitted).

*Id.* The determination whether a particular crime involves moral turpitude is a question of law. *United States v. Tuttle*, 46 F.2d 342, 345 (E.D.La.1930); *In re McAllister*, 14 Cal.2d 602, 95 P.2d 932, 933 (1939) (in bank).

In other jurisdictions the specific crime of mail fraud has been held to be a crime involving moral turpitude for which an attorney can be disbarred. *In re Fumo*, 52 Ill.2d 307, 288 N.E.2d 9, 11 (1972); *Louisiana State Bar Ass'n v. Hennigan*, 340 So.2d 264, 269 (La.1976); *Neibling v. Terry*, 177 S.W.2d 502, 503 (Mo.1944) (en banc); *Ohio State Bar Ass'n v. Mackay*, 46 Ohio St.2d 81, 346 N.E.2d 302, 303 (1976); *In re Comyns*, 132 Wash. 391, 232 P. 269, 270 (1925); *In re West*, 155 W.Va. 648, 186 S.E.2d 776, 778 (1972).

In *Attorney Grievance Comm'n v. Reamer*, 281 Md. 323, 379 A.2d 171, 173–74 (1977) the Maryland Court of Appeals held:

> It is clear from our cases that the term "moral turpitude" connotes a fraudulent or dishonest intent, and that a crime in which an intent to defraud is an element is a crime involving moral turpitude.

> . . . . .

> The essential elements of mail fraud under 18 U.S.C. § 1341 are the intentional devising of a scheme to defraud or to obtain money or property by false pretenses, representations, or promises, and the use of the United States Mails for the purpose of executing the fraudulent scheme. . . . Generally, the cases indicate that a scheme to defraud within the meaning of the mail fraud statute consists of a pattern of behavior calculated to deceive persons of ordinary prudence and comprehension.

Further, it has been held that conspiracy to commit an offense involving moral turpitude is itself an offense involving moral turpitude. *In re McAllister*, 14 Cal.2d 602, 95 P.2d 932, 933 (1939) (in bank); *see In re Leonard*, 64 Ill.2d 398, 1 Ill.Dec. 62, 356 N.E.2d 62 (1976).

In *Muniz v. State*, 575 S.W.2d 408, 411 (Tex.Civ.App.—Corpus Christi 1968, writ ref'd n.r.e.) the court correctly observed:

> The question of whether a particular crime involves moral turpitude is to be determined by a consideration of the nature of the offense as it bears on the attorney's moral fitness to continue in the practice of law.

We hold that the offenses of which Pruitt was convicted were crimes involving moral turpitude as a matter of law.

A writ of mandamus ordering Judge Heard to render an order suspending the license to practice law of Ronald B. Pruitt during the pendency of the appeal from his conviction will issue only if Judge Heard refuses to do so voluntarily.

Dissenting opinion by POPE, J., joined by CAMPBELL, J.

Dissenting opinion by GREENHILL, C. J.

POPE, Justice, dissenting.

The Supreme Court has by today's decision for the first time intervened to set aside a trial court's order denying a partial summary judgment. This court has ordered the trial court to grant the partial summary judgment. This court's action violates settled principles and practices that a mandamus is not a proper vehicle to fore-

stall trial courts from making errors nor to correct even their obvious and gross errors. Appellate Procedure in Texas § 1.1(1), at 10 (2d ed. 1979). Mandamus is not a writ which affords an accelerated appeal nor priority of review by leaping over the trial and appellate process. A practice which tolerates a direct hearing before the Supreme Court on trial court rulings defeats the orderly trial and appellate process as we fully stated in *Pope v. Ferguson,* 445 S.W.2d 950, 954 (Tex.1969), *cert. denied,* 397 U.S. 997, 90 S.Ct. 1138, 25 L.Ed.2d 405 (1970):

> Moreover, with this type of intervention, the fundamental concept of all American judicial systems of trial and appeal would become outmoded. Having entered the thicket to control or correct one such trial court ruling, the appellate courts would soon be asked in direct proceedings to require by writs of mandamus that trial judges enter orders, or set aside orders, sustaining or overruling (1) pleas to the jurisdiction, (2) pleas of privilege, (3) pleas in abatement, (4) motions for summary judgment, (5) motions for instructed verdict, (6) motions for judgment non obstante veredicto, (7) motions for new trial, and a myriad of interlocutory orders and judgments; and, as to each, it might logically be argued that the petitioner for the writ was entitled, as a matter of law, to the action sought to be compelled.

More disturbing than the court's embracing a practice which permits a case to "bounce back and forth like a rubber ball between the district and the Supreme Court" (*Maresca v. Marks,* 362 S.W.2d 299 (Tex.1962) (Walker, J., dissenting), is the court's liberty with the record before us. Recognizing that this court will not intervene by mandamus in partial summary judgment proceedings and other interim rulings at the trial court level, the court surprisingly supports its decision by declaring that the trial court's action did not arise out of a summary judgment matter. This is not a correct or fair analysis of this whole record.

### *This Was and Is a Summary Judgment Proceeding*

The State Bar filed this action to suspend Ronald Pruitt's law license and to disbar him if his conviction is affirmed on appeal. The State Bar then filed what it called its Motion for Summary Judgment. It prayed that "the court grant this Motion for Summary Judgment, and that this Interlocutory Judgment be entered in favor of the Plaintiff against Defendant, suspending the law license of the Defendant during the pendency of any appeal from the convictions . . . ." The trial court ordered a hearing on "the foregoing Motion for Summary Judgment." Mr. Pruitt filed his Opposition to Plaintiff's Motion for Summary Judgment, and the State Bar replied by pleading:

> The summary judgment evidence currently on file herein, pursuant to Rules 166–A, Texas Rules of Civil Procedure, include the Plaintiff's Original Formal Complaint . . . . Such documents on file in this cause are among those documents specifically set forth in Rule 166–A, Texas Rules of Civil Procedure and show that there is no genuine issue as to any material fact, and that the Plaintiff is entitled to judgment as a matter of law as set out in its Motion.

The State Bar in its prayer stated that it "reurges . . . its Motion for Summary Judgment heretofore filed . . . ."

The hearing before the trial court on the State Bar's suit to suspend the license pending the appeal of Mr. Pruitt's conviction, was conducted exactly as a summary judgment proceeding by use of admissions and affidavits. I know of no proceeding other than a summary judgment hearing that permits the settlement of fact issues by affidavit. Rule 166–A, Tex.R.Civ.P.

The trial judge signed an order that recited:

> [I]t is the Court's opinion that the Plaintiff's Motion for Summary Judgment should be denied . . . it is
> ORDERED, ADJUDGED AND DECREED that the Motion for Summary Judgment filed by the State Bar of Tex-

as, be, and the same hereby is, denied

.  .  ..

We now come to the State Bar's documents filed before this court. The State Bar's application for writ of mandamus filed in this court stated that the trial judge denied its "Motion for Summary Judgment," and that it has no appeal from "the denial of the Motion for Summary Judgment." The State Bar's brief before this court states that the document it filed and that was heard by the trial court was "its Motion for Summary Judgment." Its first point in the brief is: "The Respondent has, by entry of an order denying Relator's Motion for Summary Judgment, applied judicial discretion to a statute that clearly authorizes no discretion."

The State Bar in its opening statement on oral argument to this court should settle the nature of its application for this court's writ of mandamus. Counsel told this court:

The order of which we complain denies relator's motion for summary judgment

.  .  ..

But the opinion of this court says that the proceeding was not a summary judgment hearing.

The court has thus entered the thicket. We have done so to set aside a denial of a summary judgment and this court has itself granted the summary judgment, while the cause still languishes in the trial court.

The State Bar argues that it has no right to appeal, but it pleaded itself into that posture. It had to do no more than file a suit to suspend the law license and go to trial. Then either party could appeal from a final judgment. By pleading in a single action for too much, a suspension of the license and a disbarment in the future, the State Bar cannot get a final judgment until Pruitt's conviction becomes final on appeal. Even now, the State Bar could sever its claim for disbarment or dismiss it, go to trial and obtain a final judgment. The court's opinion invites pleadings that seek too much. By doing so one may urge in an extraordinary proceeding that it has no right to appeal. That is true of interim and interlocutory orders. Until now it was no basis for this court's intervention.

The precedents cited by the majority do not hold that a mandamus will lie for the denial of a summary judgment. They fall into two groups. The first group of cases includes *Stewart v. McCain*, 575 S.W.2d 509 (Tex.1979); *Texarkana Memorial Hosp., Inc., v. Jones*, 551 S.W.2d 33 (Tex.1977); *Houdaille Industries, Inc. v. Cunningham*, 502 S.W.2d 544 (Tex.1973), and *Maresca v. Marks*, 362 S.W.2d 299 (Tex.1962). This court intervened in each of those cases to protect a constitutional or substantive privilege, because, once the privileged information was disgorged, it could not be retrieved. There is another group of cases cited to support the court's grant of the motion for summary judgment. They are *State ex rel. Pettit v. Thurmond*, 516 S.W.2d 119 (Tex.1974); *State Board of Insurance v. Betts*, 158 Tex. 612, 315 S.W.2d 279 (1958); *Stakes v. Rogers*, 139 Tex. 650, 165 S.W.2d 81 (1942); and *State v. Ferguson*, 133 Tex. 60, 125 S.W.2d 272 (1939). Those cases do not stand for the rule for which they are stated in the court's opinion. Those are cases in which this court intervened because the trial court had taken action for which it lacked power or jurisdiction.

The court by today's decision has taken the step to intervene when the trial court's ruling is clearly wrong. One need not now proceed by way of an appeal; he need not satisfy the jurisdictional requirements of article 1728. He need show only that a trial judge has violated a clear and unambiguous statutory provision conferring or forbidding a particular action.

I respectfully dissent.

CAMPBELL, J., joins in this dissent.

GREENHILL, Chief Justice, dissenting.

I agree with the dissenting opinion.

This court cannot, and should not, supervise by mandamus, the actions of all the trial courts in this State. This court, partially for that reason, has not heretofore issued a mandamus for denial of a summary

judgment and should decline to do so here. There are, in my opinion, other ways in which the State Bar could have obtained the relief it sought.

Lest I be misunderstood, however, I think it should be stated that, in my opinion, Judge Heard erred in failing to suspend the license of Ronald Pruitt. The statute says that upon a conviction in any court of competent jurisdiction of any felony involving moral turpitude, "the district court . . . *shall* enter our order suspending the attorney . . . ." In my opinion the Legislature intended that "shall" means "shall" and not "may."

This means that the license *shall* be suspended upon a conviction in a trial court. It does not mean that the license shall not be suspended until the conviction is affirmed. The statute provides for *disbarment*, not suspension, upon an affirmance of the conviction. And, as the majority opinion states, the *conviction of mail fraud is clearly the conviction of a felony involving moral turpitude.