In the Matter of Leslie Hazlett THACKER.

No. D–4179.

Supreme Court of Texas.

Argued April 5, 1994.

Decided June 15, 1994.

Rehearing Overruled Sept. 8, 1994.

Dick DeGuerin, Leslie Hazlett Thacker and Chris Flood, Houston, for petitioner.

Christine E. McKeeman, Thomas H. Watkins, Dawn Miller, James M. McCormack and Linda A. Acevedo, Austin, for respondent.

CORNYN, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, and GONZALEZ, HIGHTOWER, HECHT, ENOCH and SPECTOR, Justices, join.

In this attorney discipline case, we decide whether violation of TEX.PENAL CODE § 25.11 ("§ 25.11") [1] is a felony involving moral turpitude under the Texas Rules of Disciplinary Procedure.[2] We hold that it is.

In January of 1992, Leslie Hazlett Thacker, a lawyer engaged primarily in the arranging of private adoptions, was convicted by a

---

1. TEX. PENAL CODE § 25.11 provides:

§ 25.11. Sale or Purchase of Child

(a) A person commits an offense if he:

(1) possesses a child or has the custody, conservatorship, or guardianship of a child, whether or not he has actual possession of the child, and he offers to accept, agrees to accept, or accepts a thing of value for the delivery of the child to another or for the possession of the child by another for purposes of adoption; or

(2) offers to give, agrees to give, or gives a thing of value to another for acquiring or maintaining the possession of a child for the purpose of adoption.

(b) It is an exception to the application of this section that the thing of value is:

(1) a fee paid to a child-placing agency as authorized by law;

(2) a fee paid to an attorney or physician for services rendered in the usual course of legal or medical practice; or

(3) a reimbursement of legal or medical expenses incurred by a person for the benefit of the child.

(c) An offense under this section is a felony of the third degree unless the actor has been convicted previously under this section, in which event the offense is a felony of the second degree.

TEX. PENAL CODE § 25.11 (Vernon 1989) (renumbered from § 25.06 by Acts 1987, 70th Leg., ch. 167, § 5.01(a)(44)).

2. TEX.R. DISCIPLINARY P. (1992), reprinted in TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A–1 (Vernon Supp.1994).

jury in the 263rd Judicial District Court of Harris County of purchase of a child and was assessed a penalty of ten years' probation and a $10,000.00 fine.[3]  Although this conviction is on appeal, and for that reason has yet to become final, the State Bar of Texas sought from the Board of Disciplinary Appeals ("BODA") an interlocutory order suspending Thacker's license to practice law.[4]  Finding that Thacker had been convicted of an intentional crime,[5] BODA ordered Thacker's license to practice law suspended,[6] and should her conviction become final, BODA ordered Thacker disbarred.[7]

■  We first consider the State Bar's Motion to Dismiss For Want of Jurisdiction.

3.  Thacker was convicted of the purchase of five children from the same mother, including a set of unborn twins, for purposes of adoption.

4.  TEXAS R. DISCIPLINARY P. 8.01 provides:

**8.01.  Generally**
When an attorney licensed to practice law in Texas has been convicted of an Intentional Crime or has been placed on probation for an Intentional Crime with or without an adjudication of guilt, the Chief Disciplinary Counsel shall initiate a Disciplinary Action seeking compulsory discipline pursuant to this part. Proceedings under this part are not exclusive in that an attorney may be disciplined as a result of the underlying facts as well as being disciplined upon the conviction or probation through deferred adjudication.

5.  Inquiry as to whether a crime is an "intentional" crime under the rules is guided by TEX.R. DISCIPLINARY P. 1.06(O), which defines an intentional crime as: (1) any Serious Crime that requires proof of knowledge or intent as an essential element or (2) any crime involving misapplication of money or other property held as a fiduciary.  As only the first alternative seems applicable here, resolution of whether Thacker's crime is an intentional one involves two issues: (1) is the crime a "serious crime" as defined by 1.06(U), and (2) if a serious crime, is it a serious crime "that requires proof of knowledge or intent as an essential element."  Thacker only challenges the issue of whether violation of § 25.11 is a felony involving moral turpitude, which, under 1.06(u), is part of the definition of "Serious Crime."  Thus, Thacker does not challenge whether § 25.11 is a serious crime "that requires proof of knowledge or intent as an essential element."

6.  TEXAS R. DISCIPLINARY P. 8.04 provides:

**8.04.  Procedure**
The Board of Disciplinary Appeals shall hear and determine all questions of law and fact. When an attorney has been convicted of an Intentional Crime or has been placed on probation for an Intentional Crime without an adjudication of guilt, he or she shall be suspended as an attorney licensed to practice law in Texas during the appeal of the conviction or the order of deferred adjudication.  Upon introduction into evidence of a certified copy of the judgment of conviction or order of deferred adjudication and a certificate of the Clerk of

the Supreme Court that the attorney is licensed to practice law in Texas, the Board of Disciplinary Appeals shall immediately determine whether the attorney has been convicted of an Intentional crime or granted probation without an adjudication of guilt for an Intentional Crime.  Uncontroverted affidavits that the attorney is the same person as the person convicted or granted probation without an adjudication of guilt are competent and sufficient evidence of those facts.  Nothing in these rules prohibits proof of the necessary elements in such Disciplinary Action by competent evidence in any other manner permitted by law. The Board of Disciplinary Appeals shall sit, hear, and determine whether the attorney should be disciplined and enter judgment accordingly within forty-five days of the answer day; however, any failure to do so within the time limit will not affect its jurisdiction to act. Any suspension ordered during the appeal of a criminal conviction or probation without an adjudication of guilt is interlocutory and immediately terminates if the conviction or probation is set aside or reversed.

7.  TEXAS R. DISCIPLINARY P. 8.05 provides:

**8.05.  Disbarment**
When an attorney has been convicted of an Intentional Crime, and that conviction has become final, or the attorney has accepted probation with or without an adjudication of guilt for an Intentional Crime, the attorney shall be disbarred unless the Board of Disciplinary Appeals, under Section 8.06, suspends his or her license to practice law.  If the attorney's license to practice law has been suspended during the appeal of the criminal conviction, the Chief Disciplinary Counsel shall file a motion for final judgment of disbarment with the Board of Disciplinary Appeals.  If the motion is supported by affidavits or certified copies of court documents showing that the conviction has become final, the motion shall be granted without hearing, unless within ten days following the service of the motion pursuant to Rule 21a, Texas Rules of Civil Procedure, upon the attorney so convicted or his or her attorney of record, the attorney so convicted files a verified denial contesting the finality of the judgment, in which event the Board of Disciplinary Appeals will immediately conduct a hearing to determine the issue.  If no Disciplinary Action is pending at the time the conviction becomes

The State Bar has challenged our appellate jurisdiction, arguing that BODA's order of August 25, 1993, entitled "Interlocutory Order of Suspension," is not an appealable order, and that a final order in this matter will not be rendered until, and only if, the appeal of Thacker's conviction becomes final. We overrule the State Bar's motion and hold that classification of a crime is a "determination" subject to our appellate review.

Rule 7.11 of the Texas Rules of Disciplinary Procedure provides: "An appeal from a determination of the Board of Disciplinary Appeals shall be to the Supreme Court." As it is undisputed that BODA's decision that violation of § 25.11 is a felony involving moral turpitude is a dispositive "determination," which if reversed would vacate not only Thacker's suspension from the practice of law, but also the sole basis for her disbarment, we hold that classification of a crime as a felony involving moral turpitude is a final determination subject to our review as per Rule 7.11.

■ Whether a crime is one involving moral turpitude is a question of law. *State Bar of Texas v. Heard,* 603 S.W.2d 829, 835 (Tex.1980). As we have recently stated, this legal question is to be resolved "by a consideration of the nature of the offense as it bears on the attorney's moral fitness to continue in the practice of law." *In re Humphreys,* 880 S.W.2d 402, 407 (Tex.1994) (quoting *Heard,* 603 S.W.2d at 835). When deciding whether a crime is a "felony involving moral turpitude," we limit our consideration to the nature or essence of the offense. Our inquiry relates to the classification of the crime, not the tribunal's subjective judgment of character of the particular lawyer convict-

ed. In short, we classify the crime, not the lawyer. To try to determine whether a crime is one involving moral turpitude by attempting to distinguish between lawyers of "good" character who happen to have been convicted of a particular criminal offense, and lawyers of "bad" character whose conviction of a crime is indicative of their lack of fitness to practice law, would be a hopelessly confusing—and entirely subjective—task. That process would also entail looking behind a conviction in a way *not* sanctioned by the Texas Rules of Disciplinary Procedure.[8]

Considering the nature of the offense as it bears on the attorney's moral fitness to continue in the practice of law represents the modern formulation of the moral turpitude standard, in lieu of older and far more vague standards, such as "the generally accepted moral code of mankind." *See* AMERICAN BAR ASSOCIATION MODEL RULES OF PROFESSIONAL CONDUCT 8.4 cmt. While we concede that even this standard does not provide a bright line of demarcation, the moral-fitness standard at least places the inquiry closer to the appropriate issue of concern—the continued fitness of the lawyer to practice. *See* Deborah L. Rhode, *Moral Character as a Professional Credential,* 94 YALE L.J. 491, 552 (1985) (criticizing criteria that do "nothing to refine inquiry, but merely [remove] it one step from its announced concern [of] fitness for legal practice").

■ Considering its relationship to an attorney's moral fitness to practice law, we conclude that violation of § 25.11 is a felony involving moral turpitude.[9] Section 25.11 was adopted to deter the potentially coercive effect of payments to expectant mothers at a

---

final, disbarment shall be initiated by filing a Disciplinary Action.

**8.** The Rules do not provide a procedure for such an inquiry behind the facts of the particular attorney's conviction. To the contrary, the Rules limit a tribunal's inquiry to "the validity of the record of conviction, the nature of the sentence, and the factual determination that the Respondent is the same person as the party adjudicated guilty. All attorneys convicted of Intentional Crimes, as defined in TEX.R. DISCIPLINARY P. 1.06 (1992), are subject to mandatory discipline." *Humphreys,* 880 S.W.2d at 406 (discussing Rule 8.04). Further, Rule 8.02 provides that "the record of conviction or order of deferred adjudi-

cation is conclusive evidence of the attorney's guilt."

**9.** Justice Gammage's dissent combines elements of the Rule 1.06(O) definition of "intentional" crime with older, more ambiguous standards for assessing whether a crime involves moral turpitude. 881 S.W.2d at 310 (Gammage, J., dissenting). Independent of the fact that Thacker brings no argument to this court as to the knowledge or intent element of the 1.06(O) definition, *see supra* note 5, the modern formulation of moral turpitude (i.e., continued moral fitness of the lawyer to practice) does not require the inquiries urged by Justice Gammage.

time when the best interests of the child, and for that matter the mother and father, are most likely to be subordinated to greed or other ulterior motives. *See* Timothy L. White, Note, *Toward a Dignified Theory of Children: Prohibition of Collaborative Reproduction,* 19 TEX.TECH L.REV. 1091, 1110–1111 (1988) (citing § 25.11 as one example of the nation wide "baby-selling acts ... intended to address the potential for abuse in independent adoptions and specifically, as a perverse variation of independent adoption, the abuse inherent in 'black market' adoptions of 'sold' children"). Additionally, § 25.11 is calculated to protect the interests of the birth father, the adoptive parents, and the interests of society at large. *See* Avi Katz, *Surrogate Motherhood and the Baby Selling Laws,* 20 COL.J.L. & SOC.PROBS. 1, 10–18 (1986) (discussing, among others, the interest in preventing blackmail, destruction of the family, and coercion). The moral concerns attendant to the commission of this crime are particularly well-expressed by the Supreme Court of New Jersey in *In re Baby M,* 109 N.J. 396, 537 A.2d 1227 (1988):

> The evils inherent in baby-bartering are loathsome for a myriad of reasons. The child is sold without regard for whether the purchasers will be suitable parents. The natural mother does not receive the benefit of counseling and guidance to assist her in making a decision that may affect her for a lifetime. In fact, the monetary incentive to sell her child may, depending on her financial circumstances, make her decision less voluntary. Furthermore, the adoptive parents may not be fully informed of the natural parents' medical history. Baby selling potentially results in the exploitation of all parties involved.
>
> .    .    .    .    .
>
> There are, in a civilized society, some things that money cannot buy. In America, we decided long ago that merely because conduct purchased by money was "voluntary" did not mean that it was good or beyond regulation and prohibition. Employers can no longer buy labor at the lowest price they can bargain for, even though that labor is "voluntary," or buy women's labor for less money than paid to

men for the same job, or purchase the agreement of children to perform oppressive labor, or purchase the agreement of workers to subject themselves to unsafe or unhealthful working conditions. There are, in short, values that society deems more important than granting to wealth whatever it can buy, be it labor, love, or life.

*Id.* 537 A.2d at 1241–42 & 1249 (citations omitted).

In this case, regardless of Thacker's motives, the effect is the same: a mother was induced by the payment of money to give up her children without protection from overreaching and without assurance that the children's best interest will be protected. Even though it is difficult to sketch a clear boundary for the precise limits of a lawyer's continued moral fitness to practice, the lawyer convicted of purchase of a child has crossed that line and forfeited her privilege to continue the practice of law. Given the far-reaching public interests involved in such conduct, as well as the potentially coercive elements inherent in such acts, we conclude that the purchase of a child is a felony involving moral turpitude. Therefore, we affirm BODA's order of suspension.

DOGGETT, Justice, concurs in the judgment only.

GAMMAGE, Justice, dissenting.

I respectfully dissent. The majority of this court has managed, in derogation of its own rules, to establish an autocratic system of summary compulsory discipline unlike any other state, even in cases such as this where the underlying crime is not even of the type for which an attorney must be disbarred. Under our rules, an attorney must be disbarred or have her license suspended if she is convicted of an "Intentional Crime." TEXAS R. DISCIPLINARY P. 8.01–8.06. To be classified as an "Intentional Crime," the conviction must be of a crime which (1) "requires proof of knowledge or intent as an essential element" and which (2) is a "serious crime" involving moral turpitude. TEXAS R. DISCIPLINARY P. 1.06(O), (U). Thacker's conviction

under Texas Penal Code § 25.11 fails both requirements.

First, violation of Texas Penal Code § 25.11 is not a crime which requires proof of knowledge or intent as an essential element. In other words, there is no *mens rea* requirement. *See, e.g., In re Humphreys,* 880 S.W.2d 402, 407 (Tex.1994) (*willful* attempt to evade tax); *Muniz v. State,* 575 S.W.2d 408, 413 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.) (*willfully, knowingly and unlawfully* conspiring to import marijuana). Without the requirement of intent, the crime cannot be classified as an "Intentional Crime" and cannot be the subject of compulsory discipline. TEXAS R. DISCIPLINARY P. 8.01. On this point, I must agree with the majority that Thacker has waived her argument, arguing only that violation of Texas Penal Code § 25.11 is not a crime involving moral turpitude.

The majority errs, however, in concluding that violation of section 25.11 is a crime involving moral turpitude *per se,* thereby holding the Board need not look past the conviction to the facts surrounding the commission of the crime. Under the majority's reasoning, once a conviction is established, the Board need *never* look into the circumstances surrounding the conviction. Instead, the Board is to "classify the crime" in a vacuum. 881 S.W.2d at 309. This analysis establishes summary disciplinary proceedings where every crime is either one involving moral turpitude *per se* or not at all, ignoring the fact that some crimes not normally involving moral turpitude may fit within the definition of an "Intentional Crime" because of the nature of the particular offense.

It is correct that the Board need not retry the crime to determine whether the conviction is proper or whether the attorney is in fact guilty. TEXAS R. DISCIPLINARY P. 8.02. Presumably, that issue has already been proven beyond a reasonable doubt in a court of law. Neither must the Board hear evidence concerning the attorney's character.

> The compulsory discipline rules ... do not distinguish among convicted attorneys except by the nature of their crimes. Collateral or bad acts, or character traits *not related to the record of conviction* are not at issue.

*In re Humphreys,* 880 S.W.2d at 406; TEXAS R. DISCIPLINARY P. 8.04.

What is necessary, however, is that the Board hear evidence that *is related to the record of conviction* and which bears on "the nature of their crimes"—the question of moral turpitude. *In re Humphreys,* 880 S.W.2d at 406; *see also Turton v. State Bar,* 775 S.W.2d 712 (Tex.App.—San Antonio, 1989, writ denied).

> A final judgment convicting an attorney of a crime involving moral turpitude is cause for the attorney's suspension or disbarment. A plea of guilty [or a certificate of conviction] is conclusive evidence of commission of the offense. It does not, however, answer the question whether his crime, or the circumstances of its commission, involved moral turpitude.

*Turton,* 775 S.W.2d at 716, *quoting Searcy v. State Bar,* 604 S.W.2d 256, 260 n. 2 (Tex.Civ. App.—San Antonio 1980, writ ref'd n.r.e.). The Board is not bound to discipline once a conviction is established, but must "determine whether the attorney has been convicted of an Intentional Crime" and shall "sit, hear, and determine whether the attorney should be disciplined." TEXAS R. DISCIPLINARY P. 8.04.

Only if the crime is one which involves moral turpitude *per se* is the Board relieved of its duty to look into the circumstances surrounding the offense. Violation of Texas Penal Code § 25.11, however, is not such a crime. We have repeatedly defined "moral turpitude" in the terms of the person's intent. "Moral turpitude has been defined as anything done *knowingly* contrary to justice, honesty, principle, or good morals." *Muniz,* 575 S.W.2d at 411, *citing Smith v. State,* 490 S.W.2d 902, 907 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.). "Immoral conduct is that conduct which is *willful, flagrant, or shameless,* and which shows a moral indifference ..." *Muniz,* 575 S.W.2d at 411. " '[M]oral turpitude' connotes a *fraudulent or dishonest intent* ..." *State Bar v. Heard,* 603 S.W.2d 829, 835 (Tex.1980). A case proclaiming that aggravated assault

**312**

does not involve moral turpitude *per se* identified such crimes as "involving *intentional* dishonesty for personal gain." *Turton v. State Bar*, 775 S.W.2d 712, 717 (Tex.App.—San Antonio 1989, writ denied).

To reiterate, violation of Texas Penal Code § 25.11 does not require that the person committing the offense *intend* to do so, much less that the intent rise to the level of moral turpitude.[1] Because the crime involved here is not one involving moral turpitude *per se*, I would reverse Thacker's suspension and remand to the Board so that it may examine the facts surrounding Thacker's conviction to determine whether, in this case, the crime involved moral turpitude.

---

1. The elements of "Intentional Crime" are in fact intertwined. TEXAS R. DISCIPLINARY P. 1.06(O), (U). First, the crime must be one requiring intent. TEXAS R. DISCIPLINARY P. 1.06(O). Second, of those crimes, the intent of the participant must rise to such a level as to be labelled moral turpitude. TEXAS R. DISCIPLINARY P. 1.06(U); *see State Bar v. Heard*, 603 S.W.2d 829, 835 (Tex.1980); *Muniz v. State*, 575 S.W.2d 408, 411 (Tex.Civ.App.—Corpus Christi 1978), writ ref'd n.r.e.); *Turton v. State Bar*, 775, 712, 717 (Tex.App.—San Antonio 1989, writ denied).

By saying that section 25.11 does not, *per se*, involve moral turpitude, I do not defend the act of the "sale or purchase of a child." TEXAS PENAL CODE § 25.11. I am merely stating that violation of section 25.11, an act of strict criminal liability not even requiring intent as an element, cannot be, *per se*, an act involving moral turpitude. The Board must hear evidence concerning the commission of the crime to determine if Thacker in fact violated section 25.11 with the level of intent necessary to be classified as moral turpitude. It is possible she may have been acting in a way she thought was lawful.