**In the Matter of Paula Ann LOCK.**

No. 99–0976.

Supreme Court of Texas.

Argued Jan. 17, 2001.

Decided June 21, 2001.

---

Paula Ann Lock, The Colony, Stephen R. Marsh, Dallas, for Appellant.

Christine E. McKeeman, Linda A. Acevedo, Austin, for Appellee.

Justice HANKINSON delivered the opinion of the Court, in which Chief Justice PHILLIPS, Justice ENOCH, Justice BAKER, Justice O'NEILL, and Justice JEFFERSON joined.

The issue in this appeal from a judgment of the Board of Disciplinary Appeals (BODA) concerns the appropriate disciplinary procedure to be followed when a licensed Texas attorney is convicted of or placed on probation with or without an adjudication of guilt for possession of a controlled substance. We must decide whether discipline in this instance is mandatory under the compulsory discipline process, or whether BODA may consider a range of sanctions based on the facts underlying the alleged misconduct as part of the standard grievance process.

Paula Ann Lock, a licensed Texas attorney, pleaded guilty to possession of a controlled substance, a third-degree felony, in violation of Texas Health & Safety Code § 481.115(c). The trial court deferred further proceedings without an adjudication of guilt, ordered her to pay a $500.00 fine, and placed her on community supervision for six years. Through the Chief Disciplinary Counsel, the State Bar of Texas commenced compulsory discipline proceedings against Lock pursuant to Part VIII of the Texas Rules of Disciplinary Procedure. See TEX.R. DISCIPLINARY P. 8.01–.08, *reprinted in* TEX. GOV'T CODE, tit. 2, subtit. G app. A–1. After a hearing, BODA held that Lock, having been placed on probation for possession of a controlled substance without an adjudication of guilt, had been convicted of an intentional crime, as defined by disciplinary rule 1.06(O). BODA suspended Lock for the term of her criminal probation and held that if her criminal probation is revoked, she should be disbarred pursuant to Texas Rule of Disciplinary Procedure 8.06. Lock appealed to this Court, arguing that she is not

subject to compulsory discipline because possession of a controlled substance is not a crime of moral turpitude, and therefore, on the facts of her case, she was not convicted of an intentional crime. We agree that under Texas' disciplinary scheme, Lock is not subject to compulsory discipline, but that her actions may be reviewed and sanctioned following the standard grievance procedures. We therefore reverse BODA's judgment and remand the case to BODA for further proceedings consistent with this opinion.

As the question before us is which of the two available disciplinary procedures is the appropriate way to review Lock's conduct, we begin with an overview of the disciplinary system. The Texas Rules of Disciplinary Procedure provide two procedures by which a licensed attorney may be disciplined: compulsory discipline, delineated in Part VIII, or the standard grievance procedures outlined in Parts II and III. *See In re Birdwell,* 20 S.W.3d 685, 687 (Tex.2000). Compulsory discipline is reserved for when an attorney has been convicted of or received deferred adjudication for an "intentional crime," as that term is defined in the rules; in all other instances of alleged attorney misconduct, discipline is determined in the standard grievance process. *See generally* TEX.R. DISCIPLINARY P. Part II, Part III, Part VIII.

The salient distinction between the two procedures for purposes of this appeal is that the compulsory discipline process admits no discretion. Compulsory discipline for an intentional crime turns solely on the record of conviction, the criminal sentence imposed, and the factual determinations that the attorney is licensed to practice law in Texas and is the party adjudged guilty. *See* TEX.R. DISCIPLINARY P. 8.04, 8.05, 8.06. An attorney guilty of an intentional crime must be either suspended or disbarred—depending

solely on whether the attorney's criminal sentence was probated—without regard for any collateral matters, and without any consideration or inquiry into the facts of the underlying criminal case. *See* TEX.R. DISCIPLINARY P. 8.05, 8.06.

■ The standard grievance process, unlike the compulsory process, affords some discretion. In the standard grievance process the attorney has the opportunity to present the facts underlying the alleged misconduct. The reviewing body that hears the evidence and imposes sanctions—whether an investigatory or evidentiary panel or district court—may also consider any mitigating circumstances in determining the appropriate degree of discipline. *See* TEX.R. DISCIPLINARY P. 2.13, 2.17, 3.09, 3.10. In the standard grievance process, the rules permit the reviewing body to disbar the offending attorney, but also make available a range of lesser sanctions, including various types of suspension and reprimand. *See* TEX.R. DISCIPLINARY P. 1.06(T).

Apparently concluding that the elements of Lock's crime satisfied the rules' definition of an intentional crime, the Office of Chief Disciplinary Counsel invoked the compulsory discipline process against Lock. Thereafter, BODA suspended Lock for the term of her probation. Whether compulsory discipline was the appropriate disciplinary procedure depends on the nature of Lock's offense, specifically, whether possession of a controlled substance is an intentional crime. *See* TEX.R. DISCIPLINARY P. 8.01. To hold that possession of a controlled substance is an "intentional crime," by definition BODA had to conclude that it is a "[s]erious [c]rime that requires proof of knowledge or intent as an essential element." TEX.R. DISCIPLINARY P. 1.06(O). Further, BODA concluded as a matter of law that Lock's crime qualified as a "serious crime" as that term is

defined by rule 1.06(U). Under the disciplinary rules, "serious crime" means:

> barratry; any felony involving moral turpitude; any misdemeanor involving theft, embezzlement, or fraudulent or reckless misappropriation of money or other property; or any attempt, conspiracy, or solicitation of another to commit any of the foregoing crimes.

TEX.R. DISCIPLINARY P. 1.06(U). Possession of a controlled substance is neither barratry nor a misdemeanor involving theft, embezzlement, or misappropriation of money or other property; BODA thus implicitly concluded that it is a felony involving moral turpitude. Therefore, to determine whether the Bar properly invoked the complusory-discipline procedure against Lock, we must review its core conclusion that her crime was one of moral turpitude.

■ The conclusion that a particular crime involves moral turpitude is one of law. *See In re Thacker*, 881 S.W.2d 307, 309 (Tex.1994); *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 835 (Tex.1980). We review BODA's legal conclusions de novo. *Birdwell*, 20 S.W.3d at 687. We have also established that to determine whether a crime is an intentional crime, thus permitting the Bar to pursue the compulsory discipline process, we look solely to the elements of the crime, and not to any collateral matters, such as an attorney's record of service and achievement, or to the underlying facts of the criminal case. *Duncan v. Board of Disciplinary Appeals*, 898 S.W.2d 759, 762 (Tex.1995) (attorney convicted of misprision of felony not subject to compulsory discipline because BODA could not determine if the attorney committed an intentional crime without looking to the underlying facts); *In re Humphreys*, 880 S.W.2d 402, 406–07 (Tex.1994) (attorney convicted of tax evasion subject to compulsory discipline be-

cause tax evasion is an intentional crime involving "deliberate greed and dishonesty and has a specific connection to a lawyer's fitness to practice").

■ In the context of attorney discipline, we have consistently held that crimes of moral turpitude must involve dishonesty, fraud, deceit, misrepresentation, or deliberate violence, or must reflect adversely on an attorney's honesty, trustworthiness, or fitness as an attorney. *See Birdwell*, 20 S.W.3d at 688; *Duncan*, 898 S.W.2d at 761; *Humphreys*, 880 S.W.2d at 408. Therefore, under the analysis we established in *Humphreys* and *Duncan*, we look solely to the elements of Lock's crime to determine if those elements involve any of the kinds of acts or characteristics encompassed within our definition of moral turpitude. The elements of the applicable criminal statute are that the defendant knowingly or intentionally possessed a controlled substance listed in Texas Health & Safety Code § 481.102. *See* Tex. Health & Safety Code § 481.115(a). Because the elements of this crime do not involve dishonesty, fraud, deceit, misrepresentation, deliberate violence, or reflect adversely on an attorney's honesty or trustworthiness, to fall under our definition of moral turpitude, simple possession of a controlled substance, without the intent to distribute or sell, must reflect adversely on a lawyer's fitness generally.

As we explained in *Humphreys*, quoting from the comment to rule 8.4 ("Misconduct") of the American Bar Association's Model Rules of Professional Conduct, not all crimes implicate fitness to practice law: "Many kinds of illegal conduct reflect adversely on fitness to practice law.... However, some kinds of offense carry no such implication.... Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally

answerable only for offenses that indicate lack of those characteristics relevant to law practice." 880 S.W.2d at 407. The corresponding comments to Texas Disciplinary Rule of Professional Conduct 8.04 make the same distinction between personal and professional responsibility:

> 4. Many kinds of illegal conduct reflect adversely on fitness to practice law. However, some kinds of offenses carry no such implication. Traditionally in this state, the distinction has been drawn in terms of "serious crimes" and other offenses.... These Rules continue that distinction by making only those criminal offenses either amounting to "serious crimes" or having the salient characteristics of such crimes the subject of discipline....
>
> 5. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to his fitness for the practice of law, as "fitness" is defined in these Rules. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligations that legitimately could call a lawyer's overall fitness to practice into question.

Tex. Disciplinary R. Prof'l Conduct 8.04 cmts. 4, 5, *reprinted in* Tex. Gov't Code, tit. 2, subtit. G app. A (Tex. State Bar R. art. X, § 9).

The Rules of Professional Conduct define "fitness" as

> denot[ing] those qualities of physical, mental and psychological health that enable a person to discharge a lawyer's responsibilities to clients in conformity with the Texas Disciplinary Rules of Professional Conduct. Nor-

mally a lack of fitness is indicated most clearly by a persistent inability to discharge, or unreliability in carrying out, significant obligations.

TEX. DISCIPLINARY R. PROF'L CONDUCT terminology. This definition of fitness plainly contemplates that some review of particular facts or a course of conduct may be necessary before one can conclude that an attorney should be professionally answerable for a particular offense or pattern of offenses. We simply cannot determine whether an attorney's conduct reveals "a persistent inability to discharge, or unreliability in carrying out, significant obligations" without looking to the facts of the case. The Rules of Disciplinary Procedure clearly limit compulsory discipline to, among other specified crimes, "any felony involving moral turpitude." By contrast, the Rules Governing Admission to the Bar dictate that anyone convicted of or who receives deferred adjudication for "a felony" is "conclusively deemed not to have present good moral character and fitness," and must wait five years after the completion of any sentence or period of probation before filing a declaration of intent to study law or application to take the bar exam. TEX.R. GOVERN. BAR ADM'N IV(d). While we could change the disciplinary rules to likewise say that an attorney should be professionally answerable by compulsory discipline for any crime or any felony, we are not permitted to judicially read the current express limitation, "involving moral turpitude," out of the disciplinary rules. We recognize that possession of a controlled substance may adversely affect a lawyer's ability to practice honestly and effectively. However, keeping in mind the aspects of fitness to practice highlighted above, and the fact that we determine if a crime is one of moral turpitude by looking solely to the elements of the offense, we cannot say that the elements of Lock's offense mandate the legal conclusion that every attorney guilty of that offense is categorically unfit to practice law.

Other jurisdictions have held that possession of a controlled substance is a crime of moral turpitude, but those jurisdictions do not have a comparable compulsory discipline procedure and engage in review of the underlying facts and other collateral matters to determine the appropriate sanction. *See, e.g., Florida Bar v. Kaufman,* 531 So.2d 152 (Fla.1988) (considering attorney's rehabilitation efforts in determining length of license suspension); *In re Stults,* 644 N.E.2d 1239 (Ind.1994) (looking to circumstance of multiple arrests in deciding length of suspension); *In re Gooding,* 260 Kan. 199, 917 P.2d 414 (1996) (considering mitigating circumstances and remedial actions in determining appropriate discipline); *In re Shunk,* 847 S.W.2d 789 (Mo.1993) (reviewing mitigating facts and remedial actions in determining to suspend license, rather than disbar attorney); *State ex rel. Oklahoma Bar Ass'n v. Denton,* 598 P.2d 663 (Okla.1979) (exercising discretion in determining length of license of suspension); *In re Hopp,* 376 N.W.2d 816 (S.D.1985) (considering underlying facts and collateral matters in adopting recommendation of ninety-day license suspension). These decisions, in which the courts considered the underlying facts, are thus inapposite in light of Texas' unique compulsory discipline process. We are simply not permitted under our current rules to consider any underlying facts or mitigating circumstances in a compulsory discipline proceeding. And we cannot say without looking to the underlying facts whether Lock's fitness to practice law is implicated by her crime.

Precisely because we are not permitted under our current disciplinary rules to consider any underlying facts in a compul-

sory discipline proceeding, and because the Rules of Disciplinary Procedure limit compulsory discipline to felonies involving moral turpitude, the assertions in the dissenting opinion are likewise inapposite. In particular, every case cited in the dissenting opinion may be distinguished in that the attorney's conduct involved more than simple possession, the jurisdiction does not have a comparable compulsory procedure that looks only at the elements of the crime in determining which disciplinary procedure to follow, or the ultimate tribunal looks at the underlying facts to determine the appropriate sanction.[1] In other words, the jurisprudence of almost every

1. *See In re Rivkind,* 164 Ariz. 154, 791 P.2d 1037 (1990) (taking into account all the circumstances of felony cocaine possession conviction and the attorney's subsequent rehabilitation efforts in reducing term of suspension); *People v. Stauffer,* 858 P.2d 694 (Colo.1993) (disbarring an attorney convicted of felony possession of cocaine, when that was only one of many disciplinary violations, including practicing law while suspended); *Florida Bar v. West,* 550 So.2d 462 (Fla.1989) (automatic three-year suspension for possession of cocaine reduced to eighteen months based on collateral matters including admission of wrongdoing and efforts at drug rehabilitation); *Florida Bar v. Kaufman,* 531 So.2d 152 (Fla.1988) (approving consent judgment for one-year suspension for felony possession of cocaine; considered factors such as attorney's rehabilitation efforts in determining appropriate length of suspension); *In re Stults,* 644 N.E.2d 1239 (Ind.1994) (reviewing facts and collateral matters before imposing six-month suspension on attorney who pleaded guilty to possession of cocaine and, in a separate incident, DWI); *In re Thomas,* 472 N.E.2d 609 (Ind.1985) (review of suspension following prosecutor's guilty plea to charge of marijuana possession involved "an examination of the Respondent's conduct in toto"); *In re Shunk,* 847 S.W.2d 789 (Mo.1993) (reviewing mitigating facts and remedial actions by attorney in determining to suspend license, rather than disbar attorney convicted of possessing cocaine); *In re Pleva,* 106 N.J. 637, 525 A.2d 1104 (1987) (looking at all the facts and circumstances surrounding attorney's conviction for possession of cocaine, hashish, and marijuana in upholding a six-month suspension); *In re Kinnear,* 105 N.J. 391, 522 A.2d 414 (1987) (looking at all of the facts and circumstances surrounding the attorney's guilty plea to distribution and possession of cocaine in upholding suspension for less than period of probation); *Oklahoma Bar Ass'n v. Wright,* 792 P.2d 1171 (Okla.1990) (looking to facts and circumstances in imposing two-year suspension following conviction for possessing and distributing cocaine); *State ex rel. Oklahoma Bar Ass'n v. Denton,* 598 P.2d 663 (Okla.1979) (court exercised discretion in determining appropriate length of suspension following attorney's conviction for possession of marijuana); *In re Floyd,* 328 S.C. 167, 492 S.E.2d 791 (1997) (imposing twelve-month suspension on attorney who pleaded guilty to possession of heroin and violating a law that made it illegal to obtain a controlled substance from more than one doctor without telling the doctor about the other prescription; the crime involving prescriptions was held to involve dishonesty, fraud, deceit, or misrepresentation); *In re Holt,* 317 S.C. 48, 451 S.E.2d 884 (1994) (indefinitely suspending an attorney's license when that license had previously been temporarily suspended; attorney was found to have possessed cocaine, and was indicted and sentenced to prison for five years for felony DUI after killing someone in an accident in which he was driving drunk and under the influence of cocaine); *In re Gibson,* 302 S.C. 12, 393 S.E.2d 184 (1990) (attorney consented to disbarment following one conviction for possession of cocaine and second conviction for possession of cocaine and heroin); *In re Jeffries,* 500 N.W.2d 220 (1993) (reducing sanction for use of marijuana and cocaine from disbarment to suspension and emphasizing that facts and circumstances of each case must be considered in assessing sanctions); *In re Hopp,* 376 N.W.2d 816 (S.D.1985) (after extensive review of facts and other circumstances, approving ninety-day suspension when attorney admitted to possession of cocaine); *In re Willis,* 371 N.W.2d 794 (S.D. 1985) (after extensive review of facts and other circumstances, approving 180–day suspension following attorney's admission of use and purchase of cocaine); *In re Berk,* 157 Vt. 524, 602 A.2d 946 (1991) (imposing a six-month suspension when the only charge was possession of cocaine, but facts showed attorney was "soliciting and conspiring to purchase, possess and distribute cocaine").

state court with an opinion on the issue is that possession of a controlled substance may or may not be a crime of moral turpitude, depending on the circumstances. And our compulsory discipline rules prohibit consideration of the circumstances. We may change the rules, but until we do so we are constrained to follow those rules and the analysis we established in *Humphreys* and *Duncan*.[2] How other lawyers fared under different disciplinary systems in other jurisdictions simply does not help us answer the question before us in this case, which is not whether Lock should be disciplined, but which procedure the Bar should follow in pursuing that discipline.

We note, however, that permitting the Bar to exercise the discretion afforded by the standard grievance process would likely result in the sanctions imposed under our disciplinary system being consistent with the sanctions imposed in other jurisdictions for the same conduct. For example, even in those jurisdictions that view possession of a controlled substance as a crime of moral turpitude, in which one would expect the strongest sanction of disbarment to be imposed, the typical sanction is a suspension for a particular term, and the length of the term depends on the facts and any mitigating or aggravating circumstances. *See, e.g., Kaufman*, 531 So.2d at 154 (imposing one-year suspension following felony conviction for possession of cocaine and methaqualude tablets); *Stults*, 644 N.E.2d at 1242 (imposing six-month suspension following felony conviction for cocaine possession); *Gooding*, 917 P.2d at 420 (imposing two-year suspension following felony conviction for co-

caine possession); *Shunk*, 847 S.W.2d at 792 (imposing indefinite suspension with leave to seek reinstatement in six months for felony conviction of cocaine possession); *Denton*, 598 P.2d at 664–65 (two-year suspension following conviction for marijuana possession); *Wright*, 792 P.2d at 1171–72 (two-year suspension following conviction for distributing cocaine); *Hopp*, 376 N.W.2d at 818 (ninety-day suspension following misdemeanor conviction and admission of repeated cocaine use). Similarly under Texas' standard grievance process, the sanction imposed will depend on the facts and other circumstances, and can include suspension or disbarment.

Because we would need to examine the circumstances surrounding Lock's possession of a controlled substance to determine if she were unfit to practice law, which we are prohibited from doing under the compulsory discipline rules, we cannot conclude that possession of a controlled substance is a crime of moral turpitude per se. Thus, Lock is not subject to compulsory discipline. Instead, Lock's misconduct should be reviewed and sanctioned under the standard grievance procedures. Our holding does not mean that an attorney who has pleaded guilty to possession of a controlled substance is immune from discipline or will necessarily receive the least possible sanction; we rely on the Bar to impose appropriate discipline, including suspension or disbarment when the facts so warrant, to protect the public from impaired attorneys, and to improve the reputation and integrity of the legal profession. However, the venue for that discipline is the standard grievance process.

**2.** With regard to *Santos v. Board of Disciplinary Appeals*, No. D–3523, 36 Tex. Sup.Ct. J. 1000 (June 16, 1993), the dissenting opinion expresses the view that our order affirming BODA's judgment in that case created binding precedent. It did not. All we issued in that case was an order. We did not write an

opinion or establish an "authoritative interpretation." Moreover, the case was resolved in 1993, before we decided *Humphreys* or *Duncan*, in which for the first time we delineated the proper intentional-crime analysis under our rules.

Our position is further supported by the existence of the Texas Lawyers' Assistance Program. Among other things, TLAP provides peer intervention and rehabilitation to practicing attorneys whose professional performance is impaired because of chemical dependency. This service is available not only to lawyers who take part voluntarily, but also to lawyers who have been referred by family, friends, or other members of the bar. Impaired attorneys may participate in the program without being subject to disciplinary action. In fact, TLAP receives referrals from the State Bar's disciplinary system, but TLAP will not intervene in any disciplinary action, nor will it report an impaired lawyer to the disciplinary authorities. Therefore, it would be inconsistent for us to hold that possession of a controlled substance is a crime of moral turpitude, which means by definition that an attorney is categorically unfit to practice law, when the State Bar, under our ultimate supervision, sponsors a program to assist attorneys in overcoming addiction while the attorneys continue to practice law.

■ In light of these considerations, we hold that an attorney convicted of or receiving deferred adjudication for possession of a controlled substance must be disciplined in the standard grievance process, where the underlying facts and any collateral circumstances can yield the appropriate sanction. We reiterate that our holding does not mean that a lawyer's possession or use of drugs should go undisciplined. Rather, a licensed Texas attorney convicted of or receiving deferred adjudication for possession of a controlled substance should be sanctioned in the standard grievance process. Accordingly, we reverse BODA's judgment and remand the case to BODA for further proceedings consistent with this opinion.

Justice OWEN filed a dissenting opinion, joined by Justice HECHT.

Justice OWEN, joined by Justice HECHT, dissenting.

Today the Court has overruled its prior determination that compulsory discipline applies when a lawyer is convicted of a felony for possession of cocaine. Apparently, the Court now deems the disciplinary rules too harsh. But the rules must be applied as they are currently written. If the Court believes that there should be greater discretion in dealing with an attorney convicted for felony possession of a controlled substance, then the Court should observe established procedures for amending the disciplinary rules.

The consequences of today's decision are significant for the public. After today, a lawyer who is convicted of a felony for possession of cocaine may be allowed to continue to practice law with a private reprimand as the only consequence to his or her professional status.[1] It will be possible for a lawyer to represent clients without telling them that he or she is currently serving a sentence for felony possession of a controlled substance.

Because the Court refuses to follow its own prior decision or the great weight of authority, which holds that a felony conviction for possession of cocaine is a crime involving moral turpitude, I dissent.

# I

The sole issue in this case is whether a felony conviction for possession of cocaine is a crime of moral turpitude. If it is, then

---

1. *See* TEX.R. DISCIPLINARY P. 2.13, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A–1 (Vernon 1998). All references to rules in this opinion are to these rules, unless otherwise indicated.

Lock is subject to compulsory discipline. That is because our rules require that a lawyer convicted of or placed on probation for an "Intentional Crime" with or without an adjudication of guilt will have his or her license suspended during any full probation or probation through deferred adjudication.[2] If probation is not granted or if probation is revoked, the attorney must be disbarred.[3] An "Intentional Crime" includes "any Serious Crime that requires proof of knowledge or intent as an essential element."[4] A "Serious Crime" includes "any felony involving moral turpitude."[5]

The disciplinary rules were adopted by a referendum vote of the Texas bar in 1990. This Court implemented those rules in an order creating the Commission for Lawyer Discipline and the Board of Disciplinary Appeals.[6] Our task today is to determine what the bar and this Court meant when they said that compulsory discipline applies when a lawyer commits a felony involving moral turpitude.

The concept of "moral turpitude" is not unique to Texas law and did not originate in our disciplinary rules. It has appeared in laws and rules across the country for many years. Ordinarily, when a commonly found term is used in a statute or rule, this Court would look to its generally accepted meaning when the statute or rule was promulgated and give effect to that meaning. But the Court refuses to do so in this case.

When our Rules of Disciplinary Procedure were implemented, there was a consensus among the courts that had confronted the issue that a conviction for felony possession of illegal drugs, or in some cases mere possession, was a crime involving moral turpitude. The highest courts in at least five states (Florida, Indiana, Oklahoma, South Carolina, and South Dakota) had so held.[7]

Several of these courts had also held that possession of or conviction for the possession of cocaine reflected unfitness to practice law.[8] The New Jersey Supreme Court had also held that a felony or even misdemeanor conviction for possession of cocaine adversely reflected on the fitness of an attorney to practice law and warranted discipline.[9] A New York court had similarly held that a guilty plea to a misdemeanor charge for possession of marijuana did not involve moral turpitude.[10] But it

---

2. *See id.* at 8.01 to 8.05.

3. *See id.* at 8.05, 8.06.

4. *Id.* at 1.06(O).

5. *Id.* at 1.06(U).

6. Texas Supreme Court, *Order for Implementation of the Texas Rules of Disciplinary Procedure*, Misc. Docket No. 91–0016 (Feb. 26, 1991), *reprinted in* TEXAS RULES OF COURT 451 (West 2001).

7. See *Florida Bar v. West*, 550 So.2d 462, 463 (Fla.1989); *Florida Bar v. Kaufman*, 531 So.2d 152, 153 (Fla.1988); *Oklahoma Bar Ass'n v. Denton*, 598 P.2d 663, 665 (Okla. 1979); *In re Gibson*, 302 S.C. 12, 393 S.E.2d 184 (1990); *State v. Major*, 301 S.C. 181, 391 S.E.2d 235, 237 (1990); *In re Hopp*, 376 N.W.2d 816, 818 (S.D.1985); *In re Willis*, 371 N.W.2d 794, 796 (S.D.1985); *see also In re Thomas*, 472 N.E.2d 609, 610 (Ind.1985) (holding that felony possession of marijuana was a crime involving moral turpitude).

8. *See West*, 550 So.2d at 463; *Kaufman*, 531 So.2d at 153; *Thomas*, 472 N.E.2d at 610.

9. *See In re Pleva*, 106 N.J. 637, 525 A.2d 1104, 1106–07 (1987); *In re Kinnear*, 105 N.J. 391, 522 A.2d 414, 416–17 (1987); *see also Oklahoma Bar Ass'n v. Wright*, 792 P.2d 1171 (Okla.1990) (holding that conviction for distributing cocaine to two friends in a social setting demonstrated an attorney's unfitness to practice law).

10. *In re Higgins*, 105 A.D.2d 462, 480 N.Y.S.2d 257 (N.Y.App.Div.1984).

nevertheless concluded that such a crime "necessarily reflects adversely upon the legal profession in the public view and on [the lawyer's] own fitness to practice law." [11] That court did so in spite of the fact that "[a]t no time did [the lawyer's] crime disadvantage a client, or impede or impair the quality, competence, reliability and trustworthiness of his professional conduct and the fulfillment of his professional obligations." [12]

The South Carolina Supreme Court had concluded that "because any involvement with cocaine contributes to the destruction of ordered society, ... mere possession of cocaine is a crime of moral turpitude." [13] Similarly, in *West*, the Supreme Court of Florida approved a referee's findings that possession of cocaine constituted 1) engaging in illegal conduct involving moral turpitude, 2) engaging in conduct that adversely reflected on one's fitness to practice law, and 3) an act contrary to honesty, justice, or good morals. [14] In *Hopp*, the Supreme Court of South Dakota approved a referee's findings that a lawyer who had never practiced law "fail[ed] to maintain the integrity and competence of the legal profession and [engaged] in illegal conduct involving moral turpitude" when he possessed cocaine. [15] Finally, in *Thomas*, the Indiana Supreme Court had held that although "questions of fitness and moral turpitude involve an examination of the [lawyer's] conduct in toto," misdemeanor possession of marijuana was "illegal conduct involving moral turpitude which adversely reflects on [a lawyer's] fitness to practice law." [16]

Only one decision had suggested that the felony possession of a controlled substance was not a crime involving moral turpitude. [17] That decision, dealing with the license of a real estate agent, not a lawyer, was from an intermediate appellate court and had been effectively overruled by the Florida Supreme Court in *West* by 1989. The Supreme Court of Oregon and an intermediate appellate court in New York had held that the misdemeanor possession or attempted possession of a controlled substance was not a crime involving moral turpitude. [18] But when our rules of discipline were promulgated, no court of which I am aware had then held or has since held that a felony conviction for possession of cocaine does not involve moral turpitude. And no court of which I am aware had then held or has since held that such a crime calls for discipline less severe than disbarment or suspension.

Since the time that the Texas disciplinary rules were implemented, courts of last resort in three other states (Colorado, Missouri, and Vermont) have held that a felony conviction for possession of cocaine is a crime involving moral turpitude. [19] The

---

11. *Id.* at 258.

12. *Id.*

13. *Major,* 391 S.E.2d at 237.

14. 550 So.2d at 463.

15. 376 N.W.2d at 818.

16. 472 N.E.2d at 610; *see also Denton,* 598 P.2d at 665 (holding that misdemeanor possession of marijuana is a crime of moral turpitude).

17. *See Pearl v. Florida Bd. of Real Estate,* 394 So.2d 189, 190 (Fla.Dist.Ct.App.1981).

18. *See In re Chase,* 299 Or. 391, 702 P.2d 1082, 1090 (1985); *In re Drakulich,* 299 Or. 417, 702 P.2d 1097, 1098 (1985); *Higgins,* 480 N.Y.S.2d at 257.

19. *See People v. Stauffer,* 858 P.2d 694, 695 (Colo.1993); *In re Shunk,* 847 S.W.2d 789, 791 (Mo.1993); *In re Berk,* 157 Vt. 524, 602 A.2d 946, 948 (1991).

Supreme Court of Missouri held that "[m]oral turpitude means acts which are contrary to justice, honesty, modesty or good morals, or involving baseness, vileness or depravity." [20] It, like the South Carolina court in *Major*, recognized the toll that even the consumption of cocaine has taken on society and explained why an attorney's use of cocaine is "morally reprehensible":

> In recent years illicit drug traffic has reached epidemic proportions. It threatens not only users with addiction but has blighted entire communities with death and violence. For an attorney who fully comprehends the nature and consequences of his conduct to become a participant in felony drug trafficking, even as a consumer, is morally reprehensible.
>
> In our society, lawyers hold a place of special responsibility as advisors and counselors in the law. A judicial admission that a lawyer possessed cocaine, a felony, is a matter of grave consequence. Such conduct not only brings the lawyer's judgment and honesty into question but erodes public confidence in lawyers and the courts in general. For that reason, nearly every court that has addressed the question has concluded that a felony conviction for possession of nar-

cotics is a crime of moral turpitude justifying disbarment or other disciplinary action against an attorney. Kristine C. Karnezis, Annotation, *Narcotics conviction as crime of moral turpitude justifying disbarment or other disciplinary action against attorney*, 99 A.L.R.3d 288 (1980). We agree.[21]

A number of other cases have since reconfirmed that felony possession of cocaine or other controlled substances is either a crime involving moral turpitude or that it adversely reflects on the lawyer's ability to practice law.[22]

The Court does not dispute the fact that it is reversing the long-standing position of the Board of Disciplinary Appeals, reversing itself,[23] and doing so without the support of even one other case in an American jurisdiction. The Court simply asserts that cases from any other jurisdiction are "inapposite" because our state's compulsory discipline rule is unique.[24] But that is no answer to the only issue in this case, which is whether felony possession of cocaine is a crime involving moral turpitude. Words have meaning. Since our disciplinary rules were implemented in 1991, they have used the words "felony involving moral turpitude." The consequences that flow from committing a felony have no bearing

20. *Shunk*, 847 S.W.2d at 791.

21. *Id.* at 791–92.

22. *See In re Stults*, 644 N.E.2d 1239, 1241 (Ind.1994) (holding that attorney convicted for felony possession of cocaine was not fit to practice law even though no harm came to a client); *In re Floyd*, 328 S.C. 167, 492 S.E.2d 791, 792 (1997) (holding that possession of heroin is a crime involving moral turpitude); *In re Holt*, 317 S.C. 48, 451 S.E.2d 884, 885 (1994) (holding that possession and use of cocaine are acts involving moral turpitude even when there was no conviction); *In re Jeffries*, 500 N.W.2d 220, 225–26 (S.D.1993) (holding that lawyer who had a misdemeanor

conviction for possession of cocaine and admitted to "recreational use" of cocaine was unfit to practice law even though there was no evidence that the public had been harmed by his drug use); *see also In re Rivkind*, 164 Ariz. 154, 791 P.2d 1037, 1040 (1990) (holding that attorney's conviction for felony attempted possession of cocaine "[w]ithout doubt ... places in question his ability to respect and uphold the law").

23. *See Santos v. Bd. of Disciplinary Appeals*, No. D–3523, 36 Tex. Sup.Ct. J. 1000 (June 16, 1993).

24. *See* 54 S.W.3d at 310.

on whether the crime involves moral turpitude.

The Court says that other jurisdictions "engage in review of the underlying facts and other collateral matters to determine the appropriate sanction" for possession of cocaine.[25] That is true for the most part, but irrelevant. The clear consensus among courts of last resort in other states is that a felony conviction for possession of cocaine is a crime involving moral turpitude, *regardless of mitigating circumstances in any particular case.* The mitigating circumstances that courts have considered bore only on the nature and duration of discipline, not whether the crime was one involving moral turpitude. The fact that our disciplinary rules foreclose any discretion in the nature and duration of discipline has nothing to do with the threshold question of whether the elements necessary to establish a crime necessarily involve moral turpitude. The Court cannot legitimately look first to the *consequences* of imposing compulsory discipline before deciding whether compulsory discipline applies.

I note, although it is immaterial to whether a crime involves moral turpitude, that in a few of the decisions that hold possession of cocaine involves moral turpitude, there was a compulsory aspect to attorney discipline. In some cases, there was an automatic suspension of the attorney's license when he or she was convicted of possession of a controlled substance, with further sanctions to be determined at a later time.[26]

In sum, every court to address the issue has said that felony possession is either a crime involving moral turpitude or that the lawyer is unfit to practice law even if there was no actual harm to a client. That was the law when the Texas bar adopted the disciplinary rules, and the bar and this Court understood that to be the law. The Court today nevertheless turns a blind eye to all precedent, including its own.

This Court issued an order eight years ago in *Santos v. Board of Disciplinary Appeals* affirming compulsory discipline of a lawyer convicted of felony possession of cocaine.[27] That interpretation was authoritative. The rules have not changed since that decision.[28] In *Santos,* a lawyer had

---

25. *Id.* at 309.

26. *See, e.g., Rivkind,* 791 P.2d at 1039 (reflecting interim suspension by the Supreme Court of Arizona under Ariz. R. Sup.Ct. 57(b), even though "nothing in the record showed [the lawyer's] professional performance had been adversely affected"); *West,* 550 So.2d at 463 (reflecting that the lawyer "was automatically suspended from the practice of law for a period of three years," and that the lawyer then filed a petition to modify or terminate the suspension); *Kaufman,* 531 So.2d at 154 (reflecting temporary suspension upon conviction of a felony that remained in effect for seventeen months, until final disposition of disciplinary action); *Gibson,* 393 S.E.2d at 184 (reflecting temporary suspension).

27. *See Santos,* No. D–3523, 36 Tex. Sup.Ct. J. 1000 (June 16, 1993).

28. The compulsory discipline rule provided then as now:

> When an attorney licensed to practice law in Texas has been convicted of an Intentional Crime or has been placed on probation for an Intentional Crime with or without an adjudication of guilt, the Chief Disciplinary Counsel shall initiate a Disciplinary Action seeking compulsory discipline pursuant to this part. The completion or termination of any term of incarceration, probation, parole, or any similar court ordered supervised period does not bar action under Part VIII of these rules as hereinafter provided. Proceedings under this part are not exclusive in that an attorney may be disciplined as a result of the underlying facts as well as being disciplined upon the conviction or probation through deferred adjudication.

TEX.R. DISCIPLINARY P. 8.01.

been sentenced by a criminal court to two years probation without adjudication of guilt for felony possession of cocaine. The Board of Disciplinary Appeals then held that the lawyer's license must be suspended until he completed probation. This Court affirmed that determination on its merits, although it did so without an opinion. The Court thus construed the disciplinary rules to mean that felony possession of cocaine was a crime to which compulsory discipline applied. The issue in *Santos* was the same as the issue presented by Lock's appeal in this case: whether a felony conviction for possession of cocaine is an "Intentional Crime" and a "felony involving moral turpitude." [29]

## II

When the issue is moral turpitude, we look at the elements necessary to establish the crime for which an attorney has been convicted or placed on probation to see if that crime necessarily involves moral turpitude.[30] We do not engage in a "subjective judgment of character of the particular lawyer convicted." [31] We explained in *In re Thacker* why we look at the crime itself, not mitigating factors in any particular case:

[W]e classify the crime, not the lawyer. To try to determine whether a crime is one involving moral turpitude by attempting to distinguish between lawyers of "good" character who happen to have been convicted of a particular criminal offense, and lawyers of "bad" character whose conviction of a crime is indicative of their lack of fitness to practice law, would be a hopelessly confusing—and entirely subjective—task. That process would also entail looking behind a conviction in a way *not* sanctioned by the Texas Rules of Disciplinary Procedure.[32]

Lock concedes that the crime for which she was convicted is an "Intentional Crime," which "requires proof of knowledge or intent as an essential element." [33] Lock was convicted under section 481.115(c) of the Health and Safety Code, which makes the knowing or intentional possession of one gram or more but less than four grams of cocaine a third-degree felony.[34] The sole point in dispute is whether a felony conviction for the knowing and intentional possession of cocaine involves moral turpitude.

This Court has said repeatedly that whether a particular crime involves moral turpitude is a question of law that " 'is to be determined by a consideration of the nature of the offense as it bears on the attorney's *moral* fitness to continue in the

---

29. *Id.* at 1.06(O), 1.06(U).

30. *In re Thacker*, 881 S.W.2d 307, 309 (Tex. 1994).

31. *Id.*

32. *Id.* (emphasis in original).

33. Tex.R. Disciplinary P. 1.06(O).

34. Section 481.115 provides:

§ 481.115. Offense: Possession of Substance in Penalty Group 1
    (a) Except as authorized by this chapter, a person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1, unless the person obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional practice.
                    * * *
    (c) An offense under Subsection (a) is a felony of the third degree if the amount of the controlled substance possessed is, by aggregate weight, including adulterants or diluants, one gram or more but less than four grams.
Tex. Health & Safety Code § 481.115(a), (c). Cocaine is a controlled substance listed in Penalty Group 1 under the Health and Safety Code. *Id.* § 481.102(3)(D) (listing cocaine).

practice of law.' " [35] The question, therefore, is not just whether an attorney has the skills and mental fitness to represent clients in the practice of law, but whether the attorney also has the *moral* fitness that our disciplinary rules demand.

We have had no difficulty in concluding that crimes such as tax evasion and conspiring to defraud the United States are crimes involving dishonesty, fraud, deceit, or misrepresentation, or are crimes that reflect adversely on a lawyer's honesty or trustworthiness, and therefore are crimes involving moral turpitude.[36] But moral fitness is not limited to refraining from dishonest acts, misrepresentation, or deliberate violence. At least two of this Court's decisions reflect that the concept of *moral fitness* is not nearly so constrained. Moral fitness takes into account the broader implications of the crime and the interests of society at large, not just the implications for a lawyer's clients.

One of those decisions is *Duncan*.[37] In that case, an attorney pled guilty to and was placed on probation for misprision of felony, a crime defined by section 4 of Title 18 of the United States Code. That federal law provided that any person who had knowledge of the actual commission of a federal felony also committed a crime if he or she concealed the commission of the felony and did not report it to a judge or

other person in civil or military authority.[38] This Court held that misprision of felony did not involve moral turpitude *per se* "[b]ecause a conviction for misprision of felony could conceivably be based upon an attorney's refusal to divulge privileged information." [39] The Court concluded that an attorney convicted for misprision of felony by honoring "a solemn obligation not to reveal privileged and other confidential client information, except as permitted or required in certain limited circumstances as provided in [Texas disciplinary rule 1.05]" would not have committed a crime involving moral turpitude.[40]

The rationale in *Duncan* that is particularly significant to the case before us today is that while "the refusal to divulge privileged information is an entirely different matter," a "willful concealment of non-confidential information would involve moral turpitude." [41] This Court thus concluded that the only time when misprision of felony would not be a crime of moral turpitude is when information is withheld pursuant to a privilege imposed by law. Accordingly, a lawyer commits a crime involving moral turpitude if, for example, he or she is convicted of withholding information from investigating authorities about a federal felony that the lawyer knows was committed by his or her son, daughter, or

---

**35.** *In re Humphreys*, 880 S.W.2d 402, 407 (Tex.1994) (quoting *State Bar v. Heard*, 603 S.W.2d 829, 835 (Tex.1980)) (emphasis added); *see also Duncan v. Bd. of Disciplinary Appeals*, 898 S.W.2d 759, 761 (Tex.1995); *Thacker*, 881 S.W.2d at 309.

**36.** *See Humphreys*, 880 S.W.2d at 408; *In re Birdwell*, 20 S.W.3d 685, 689 (Tex.2000).

**37.** 898 S.W.2d 759.

**38.** The federal statute under consideration provided:

> Misprision of Felony: Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined not more than $500 or imprisoned not more than three years, or both.

18 U.S.C. § 4 (1948), *amended by* 18 U.S.C. § 4 (1994).

**39.** *Duncan*, 898 S.W.2d at 761.

**40.** *Id.* at 761–62.

**41.** *Id.* at 761.

other close relative, who is not the lawyer's client. A lawyer's decision to withhold information about a crime committed by a loved one is an intensely personal one that would not ordinarily impact clients or diminish that lawyer's ability to practice law. But under *Duncan*, this Court would say that a crime involving moral turpitude has been committed and that the lawyer is morally unfit to practice law because of the implications for society at large. I can see no reasoned basis for concluding that a lawyer who is convicted for withholding information about a loved one's federal felony is subject to compulsory discipline, but that a lawyer convicted of a felony for knowingly and intentionally possessing cocaine is not.

Another decision of this Court in which we considered the implications for society at large in deciding if a crime involved moral turpitude is *Thacker*.[42] In that case, Thacker, a lawyer, was convicted of accepting or agreeing to accept "a thing of value for the delivery of [a] child to another or for the possession of the child by another for purposes of adoption."[43]

Thacker arranged the adoption of a mother's three children and unborn twins, and the transaction did not fall within any of the statutory exceptions. We recognized that Thacker's motives in the transaction might have been pure.[44] But the Legislature had adopted a statute to curb "the *potentially* coercive effect of payments to expectant mothers," and the statute was "calculated to protect the interests of the birth father, the adoptive parents, and the interests of society at large."[45] We held that Thacker committed a crime involving moral turpitude and that compulsory discipline therefore applied even though the Penal Code did not require a finding of coercion or an adverse affect on the interests of the child, mother, father, or adoptive parents. The "interests of society at large" and the *potential* for "evils inherent in baby-bartering" were paramount in determining if the crime was one involving moral turpitude.[46] Mitigating circumstances that might exist in a particular case were irrelevant.

Although in *Santos* this Court upheld the compulsory discipline of a lawyer sen-

42. 881 S.W.2d 307.

43. Thacker was convicted under former section 25.11 of the Texas Penal Code, which provided:

> § 25.11. Sale or Purchase of Child
> (a) A person commits an offense if he:
> (1) possesses a child or has the custody, conservatorship, or guardianship of a child, whether or not he has actual possession of the child, and he offers to accept, agrees to accept, or accepts a thing of value for the delivery of the child to another or for the possession of the child by another for purposes of adoption; or
> (2) offers to give, agrees to give, or gives a thing of value to another for acquiring or maintaining the possession of a child for the purpose of adoption.
> (b) It is an exception to the application of this section that the thing of value is:
> (1) a fee paid to a child-placing agency as authorized by law;
> (2) a fee paid to an attorney or physician for services rendered in the usual course of legal or medical practice; or
> (3) a reimbursement of legal or medical expenses incurred by a person for the benefit of the child.
> (c) An offense under this section is a felony of the third degree unless the actor has been convicted previously under this section, in which event the offense is a felony of the second degree.

Former Tex. Pen.Code § 25.11, *renumbered as* § 25.08 and *amended by* Act of May 29, 1993, 73d Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3628.

44. *Thacker*, 881 S.W.2d at 310 (noting "regardless of Thacker's motives, the effect is the same").

45. *Id.* at 309–10 (emphasis added).

46. *Id.* at 310.

tenced to probation without adjudication of guilt for possession of cocaine, it did not explain in a written opinion why a conviction for possession of cocaine is a crime involving moral turpitude. But courts in other jurisdictions have. The South Carolina Supreme Court has held that " '[o]ne who possesses this controlled substance, even for his own use, fosters the prosperity of the lucrative and destructive industry of illicit cocaine manufacture and trafficking.' "[47] That court explained at some length why it was reversing its prior decision in *State v. Ball* that possession of cocaine primarily involved self-destructive behavior and therefore was not a crime of moral turpitude:

> The drug "cocaine" has torn at the very fabric of our nation. Families have been ripped apart, minds have been ruined, and lives have been lost. It is common knowledge that the drug is highly addictive and potentially fatal. The addictive nature of the drug, combined with its expense, has caused our prisons to swell with those who have been motivated to support their drug habit through criminal acts. In some areas of the world, entire governments have been undermined by the cocaine industry.[48]

The South Carolina Supreme Court then concluded that "because any involvement with cocaine contributes to the destruction of ordered society, we hold that mere possession of cocaine is a crime of moral turpitude."[49]

I would hold that a felony conviction for possession of cocaine is a "Serious Crime" within the meaning of our disciplinary rules because it involves moral turpitude and implicates the attorney's moral fitness to practice law.

## III

The Court's decision today has removed any element of *moral* fitness from the determination of whether a crime involves moral turpitude. In doing so, the Court has overruled our prior case law *sub silentio*. Instead of citing the Rules of Disciplinary Procedure,[50] which govern the discipline of lawyers, and our decisions interpreting what moral turpitude means under those rules, the Court turns to the State Bar Rules of Professional Conduct,[51] and plucks out the definition of "fitness" found in the "Terminology" section of the State Bar Rules of Professional Conduct.[52] The Court then uses that definition to eliminate *moral* fitness from the analysis of whether a crime involves moral turpitude.[53]

But the State Bar Rules of Professional Conduct do not support this evisceration of the Disciplinary Rules. Although the Court quotes from comments 4 and 5 to State Bar Rule of Professional Conduct 8.04, it refuses to give any real meaning to them. Comment 5 says: "A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligations

---

**47.** *State v. Major*, 301 S.C. 181, 391 S.E.2d 235, 237 (1990) (quoting *State v. Ball*, 292 S.C. 71, 354 S.E.2d 906, 909 (1987) (Gregory, C.J., dissenting)).

**48.** *Major*, 391 S.E.2d at 237.

**49.** *Id.*

**50.** Tex.R. Disciplinary P., *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A–1 (Vernon 1998).

**51.** Tex. Disciplinary R. Prof'l Conduct, *reprinted in* Tex Gov't Code Ann., tit. 2, subtit. G app. A (Vernon Supp.1997) (Tex. State Bar R. art. X, § 9).

**52.** 54 S.W.3d at 308 (citing Tex. Disciplinary R. Prof'l Conduct terminology).

**53.** *See* 54 S.W.3d at 308.

that legitimately could call a lawyer's overall fitness to practice into question."[54] If minor offenses can indicate "indifference to legal obligations," then surely a felony conviction for possession of cocaine demonstrates an "indifference to legal obligations" that "call[s] a lawyer's overall fitness to practice into question." But the Court eliminates any consideration of "indifference to legal obligations" in deciding if a crime involves moral turpitude.

The breadth of the Court's change in the law governing lawyers is significant. The Court says that "crimes of moral turpitude must involve dishonesty, fraud, deceit, misrepresentation, or deliberate violence, or must reflect adversely on an attorney's honesty, trustworthiness, or fitness as an attorney."[55] The Court recognizes that "barratry [or] a misdemeanor involving theft, embezzlement, or misappropriation of money or other property" is a "Serious Crime" to which compulsory discipline would apply.[56] When it comes to fitness, however, the Court says that in every case, "[w]e simply cannot determine whether an attorney's conduct reveals 'a persistent inability to discharge, or unreliability in carrying out, significant obligations' without looking to the facts of the case."[57] Accordingly, unless a lawyer commits a crime that involves some element of deceit or deliberate violence, he or she is not subject to compulsory discipline, no matter how serious the crime might otherwise be.

Under the Court's newly fashioned and limited formulation of what fitness means in the context of moral turpitude, a conviction for a murder that was not "deliberate" would not per se implicate fitness for the practice of law. The Court says fitness is limited to mental and physical fitness, to the exclusion of moral fitness. The Court says fitness is only

> those qualities of physical, mental and psychological health that enable a person to discharge a lawyer's responsibilities to clients in conformity with the Texas Disciplinary Rules of Professional Conduct. Normally, a lack of fitness is indicated most clearly by a persistent inability to discharge, or unreliability in carrying out, significant obligations.[58]

A lawyer convicted of any one of a host of felonies could satisfy the Court's new test for fitness and thus be exempt from compulsory discipline.

Today's decision significantly distorts the compulsory discipline scheme. Now, an attorney convicted for stealing a magazine or cigarette lighter from a grocery store is subject to compulsory discipline, while an attorney convicted of possession of cocaine is not. A theft conviction reflects adversely on an attorney's fitness to practice because it poses the possibility that the attorney will not be faithful with a client's funds. But a felony conviction for possession of narcotics is no less disturbing because it shows a profound disrespect for the law. Today's decision leaves the impression that the Court does not view an attorney's possession of a controlled substance as a very serious offense—that it falls in a category far removed from offenses such as shoplifting.

In deciding today that a felony conviction for possession of cocaine is not a crime involving moral turpitude, the Supreme Court of our State has failed to faithfully apply the principles articulated in its prior

---

54. Tex. Disciplinary R. Prof'l Conduct 8.04 cmt. 5.

55. 54 S.W.3d at 308.

56. *Id.* at 307.

57. *Id.* at 309.

58. *Id.* at 309 (quoting Tex. Disciplinary R. Prof'l Conduct terminology).

decisions. It has also failed to apply traditional principles for construing statutes and rules.

## IV

The Court argues that to impose compulsory discipline on an attorney convicted of possession of narcotics would be inconsistent with the Texas Lawyers' Assistance Program sponsored by the State Bar of Texas to help rehabilitate lawyers impaired by chemical dependency. The argument has at least three flaws. First, the Court itself suggests that discipline might well be warranted in some circumstances, but it cannot explain why compulsory discipline is inconsistent with rehabilitation programs while non-compulsory discipline is not. Second, compulsory discipline is not imposed for impairment due to a chemical dependency; it is imposed for a felony conviction or probation with or without an adjudication of guilt. There is no inconsistency in the bar's trying to help its members escape chemical dependency and yet disciplining those who actually stand convicted of or sentenced for a felony.

Finally, the Lawyer's Assistance program essentially extends the traditional attorney-client privilege to lawyers who are addicted. If a lawyer who has committed a crime seeks legal counsel from another lawyer, the lawyer whose advice is sought is not required to, and indeed cannot, report that crime to law enforcement authorities.[59] By the same token, an addicted lawyer may seek help from another lawyer and the State Bar. But the fact that he or she seeks help does not shield the lawyer from independent criminal prosecution and should not shield the lawyer from the consequences of that prosecution under the rules governing lawyer discipline. No court in the country has indicated that anything short of suspension or disbarment would be an appropriate sanction for a felony conviction of a controlled substance. The consequences in other jurisdictions for felony possession of a controlled substance have been suspension for a significant period of time or disbarment, not a lesser sanction such as public or private reprimand.[60] Yet, after today, Texas stands as the lone state that permits a lesser sanction, including a private reprimand, to suffice.

There is no inconsistency between the existence of the Texas Lawyer's Assistance Program and holding that a felony involving moral turpitude includes a felony conviction for possession of cocaine. But there is an inconsistency between this Court's rules governing admission to the bar in Texas and the Court's refusal today to consider moral fitness and moral character in deciding whether a felony convic-

---

**59.** *See* Tex.R. Evid. 503(b)(2):

(2) *Special Rule of Privilege in Criminal Cases.* In criminal cases, a client has a privilege to prevent the lawyer or lawyer's representative from disclosing any other fact which came to the knowledge of the lawyer or the lawyer's representative by reason of the attorney-client relationship. (emphasis in original)

**60.** *See Rivkind,* 791 P.2d at 1044 (two-year suspension); *Stauffer,* 858 P.2d at 699 (disbarment for felony conviction of cocaine where there were other disciplinary problems); *West,* 550 So.2d at 463 (automatic suspension of three years reduced to eighteen months); *Shunk,* 847 S.W.2d at 792 (indefinite suspension with leave to apply for reinstatement within six months even though the attorney had already been discharged from his criminal probation); *Gibson,* 393 S.E.2d at 184 (disbarment); *see also Thomas,* 472 N.E.2d at 610 (three-year suspension for misdemeanor possession of marijuana); *Denton,* 598 P.2d at 665 (suspension during probation period for misdemeanor possession of marijuana); *Holt,* 451 S.E.2d at 885 (indefinite suspension for possession of cocaine even though there was no conviction).

tion for possession of cocaine is a crime involving moral turpitude. Our rules governing admission to the bar require prospective lawyers to possess good moral character because that "is a functional assessment of character and fitness of a prospective lawyer."[61] A person convicted of a felony is conclusively deemed not to have good character or moral fitness to practice law for at least five years after the completion of a sentence or probation.[62] Compulsory discipline differs slightly from the bar admission rules because under *Duncan* and *Humphreys*, we have recognized that there are rare instances in which a felony will not necessarily involve moral turpitude; the underlying facts must be considered. But what the Court now refuses to acknowledge is that moral turpitude necessarily embodies the concept of moral fitness and that many crimes demonstrate a lack of *moral fitness* per se. Every other court in the country to decide the issue has said that a felony conviction for possession of cocaine is a crime involving moral turpitude or that such a conviction means that the lawyer is unfit to practice law without regard to the facts of the particular case.

## V

This case is about the moral standards for fitness to practice law—what a cynical public regards as an oxymoron. It is very difficult to defend the integrity and stature of the legal profession to its many critics when the Supreme Court of a major state reverses its own agency for lawyer grievances and holds, without authority, that there may well be nothing inconsistent with being convicted of felony possession of a controlled substance and being fit to practice law. The fact that such a conviction automatically results in the loss of the right to vote[63] but not suspension of a license to practice law implies that the Court thinks there is a higher moral standard for voting than for practicing law.

The United States Supreme Court has observed, "Of all classes and professions, the lawyer is most sacredly bound to uphold the laws."[64] Not so in Texas. The public's natural suspicions of a profession that regulates and disciplines itself will, regrettably, be heightened by today's decision, and the public's estimation of the legal profession further diminished.

---

61. Section (b) of Rule IV of the Rules Governing Admission to the Bar provides in its entirety:

(b) Good moral character is a functional assessment of character and fitness of a prospective lawyer. The purpose of requiring an Applicant to possess present good moral character is to exclude from the practice of law those persons possessing character traits that are likely to result in injury to future clients, in the obstruction of the administration of justice, or in a violation of the Texas Disciplinary Rules of Professional Conduct. These character traits usually involve either dishonesty or lack of trustworthiness in carrying out responsibilities. There may be other character traits that are relevant in the admission process, but such traits must have a rational connection with the Applicant's present fitness or capacity to practice law and accordingly must relate to the legitimate interests of Texas in protecting prospective clients and in safeguarding the system of justice within Texas.

TEX.R. GOVERN. BAR ADM'N IV(b) (West 2001).

62. Rule IV(d)(2) provides:

(2) An individual guilty of a felony under this rule is conclusively deemed not to have present good moral character and fitness and shall not be permitted to file a Declaration of Intention to Study Law or an Application for a period of five years after the completion of the sentence and/or period of probation.

*Id.* Rule IV(d)(2).

63. TEX. ELEC.CODE § 11.002(4).

64. *Ex parte Wall*, 107 U.S. 265, 274, 2 S.Ct. 569, 27 L.Ed. 552 (1882).

**324**

* * * * *

This and other cases that have come before this Court convince me that our disciplinary rules need revision. But an opinion of this Court is not the vehicle to make those revisions. The rules currently require compulsory discipline of a lawyer convicted of a felony for possession of cocaine. Because the Court holds otherwise, I dissent.