In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00058-CV


______________________________





IN RE:


GLADEWATER HEALTHCARE CENTER, IN


ITS ASSUMED OR COMMON NAME, ET AL.








 


Original Mandamus Proceeding







 
 



Before Morriss, C.J., Carter and Moseley, JJ.

Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 Relators (1) are several entities and individuals that have been involved in the operation of
nursing homes in Upshur County and that are defendants in a long-pending healthcare liability
action. (2) Plaintiff in that action, the real party in interest here, alleges negligence in the care of a
nursing home resident, John Richardson, leading to that resident's death. Relators seek a writ of
mandamus to quash, in that action, depositions sought of certain executive officers of Relators. 
After examining the recent procedural history of the case, Relators' contentions, the role of the
special master who ordered the depositions, and the scope of our authority to issue a writ of
mandamus, we dismiss Relators' petition for want of jurisdiction.





(1) Procedural Background

 In December 2008, Plaintiff noticed the depositions of three high-level executives of
Relators, Fran Kirley, Brett Bolt, and Meera Riner. (3) In response a short time later, Relators filed
motions to quash Plaintiff's notice of intention to depose the three executives and motions for
protective order prohibiting the taking of depositions of the three executives, accompanied by the
requisite affidavits in which each of the three executives denied that he or she had knowledge of
facts relevant to the lawsuit. 

 Plaintiff responded to the executives' motions, contending that answers given in deposition
by Nurse Sherry Clark (4) confirmed that "Kirley, Bolt, and Riner were key fact witnesses in the case"
and "possessed unique and superior knowledge relevant to Plaintiff's core allegations." They went
on to cite several specific portions of Clark's deposition that would show such. Plaintiff then stated
that memoranda produced in the case, official cost-report information, and facility lease agreements
confirm that all three executives possessed "unique and superior knowledge" concerning the subject
matter of Plaintiff's allegations and were directly involved in the operations and management of
Gladewater Healthcare Center, leading to the widespread neglect of residents and, ultimately,
Richardson's injuries and death. 

 On April 22, 2009, the trial court signed an order of reference assigning Richard Davis as
special master to preside over "discovery disputes" and all other pretrial matters. See Tex. R. Civ.
P. 171. On May 15, 2009, the special master signed an order denying Relators' motions to quash and
for protective orders. Further, the special master ordered that Relators make the three executives
available for deposition on or before June 15, 2009.

 Relators seek from this Court a writ of mandamus directing Davis to vacate the May 15 order
denying the motions to quash and for protective orders. To support their contention that Davis
abused his discretion, Relators rely heavily on Crown Central Petroleum Corp. v. Garcia, 904
S.W.2d 125 (Tex. 1995), and In re Alcatel USA, Inc., 11 S.W.3d 173 (Tex. 2000). Relators maintain
that Plaintiff failed to carry the burden that was shifted to him on the filing of the motions for
protective orders, and the executives' affidavits filed with the motions.

(2) Davis' Role in this Litigation

 Relators identify Davis as an "assigned judge" and treat Davis' order as the order of the trial
court. We believe this to be an improper characterization and one inconsistent with the law and the
facts of this case. The trial court appointed Davis as "special master," specifically citing to the rule
of civil procedure concerning special masters. See Tex. R. Civ. P. 171. The trial court's order
appointing Davis as special master states as follows: 

 The Special Master's ruling and orders shall not be appealable by the aforementioned
parties to this Court, but shall be appealable as any other orders of this court pursuant
to the Texas Rules of Civil Procedure. This Court will promptly enter an order or
rulings in accordance with the rulings and/or recommendation of the Special Master.


We find no order confirming the special master's discovery "order" or recommendations, however. (5) 
And Relators clearly seek mandamus relief only from the special master's ruling. So, before we get
to the merits of Relators' contentions, we first must decide whether we have the authority to issue
a writ of mandamus against a special master appointed pursuant to Rule 171 of the Texas Rules of
Civil Procedure.


(3) Our Authority to Issue Writs

 Each court of appeals for a court of appeals district may issue all writs of mandamus,
agreeable to the principles of law regulating those writs, against a:


 (1) judge of a district or county court in the court of appeals district; or


 (2) judge of a district court who is acting as a magistrate at a court of inquiry under
Chapter 52, Code of Criminal Procedure, in the court of appeals district.


Tex. Gov't Code Ann. § 22.221(b) (Vernon 2004). We lack jurisdiction to issue a writ against a
person whose capacity is not listed in Section 22.221. (6) See In re Jon, 97 S.W.3d 870, 871 (Tex.
App.--Texarkana 2003, orig. proceeding).

(4) Writ Unavailable Against Special Master, Not Sought Against Trial Court

 Clearly, a special master is not one of the officers listed in Section 22.221 of the Texas
Government Code, against whom we may issue a writ of mandamus.

 In re Alcatel is a case which appears to deal with the recommendations of a special master
in the context of mandamus relief. 11 S.W.3d at 175. The important distinction between Alcatel
and the instant case, though, is that the trial court in Alcatel reviewed and affirmed the special
master's report or order, and the writ of mandamus was sought against the trial court based on the
order it signed after reviewing the special master's report or order. See id. Here, the record does

not reflect such an order from the trial court. The order at issue here comes from and is signed by
the special master only.

 Relators seek a writ of mandamus against Davis, identifying him as an assigned judge, a role
distinct from his appointed role as special master. See Tex. Gov't Code Ann. § 74.056 (Vernon
2005) (relating to assignment of judges by presiding judge of administrative region). Clearly, here,
Davis is not in the role of an assigned judge. (7) He stands in the role of a special master and, as such,
is not one against whom we can issue a writ of mandamus. 

 Since the trial court has not entered an order affirming or otherwise reviewing the special
master's rulings and/or recommendations, we have nothing to review which would authorize us to
issue a writ of mandamus against the trial court on this petition. Relators do not seek such. Nor
have they argued that the trial court's order appointing Davis as special master constitutes a blanket
order affirming in advance any report or recommendations from the special master. (8) We have not
been requested to issue a writ of mandamus against the district court, nor could we without having
any action by the trial court to review.

 Due to our lack of jurisdiction, we deny Relators' petition for writ of mandamus.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: July 13, 2009

Date Decided: July 14, 2009


1. Relators are Gladewater Healthcare Center, in its Assumed or Common Name; Nexion
Health at Gladewater, Inc.; Nexion Health, Inc.; Nexion Health Management, Inc.; Nexion Health
at Texas, Inc.; Nexion Health Leasing, Inc.; Nexion Health Realty, Inc.; Darlene Maloney,
Individually; Bruce Henshaw, Individually; and Donna Albright, Individually.
2. The underlying case is docketed under trial court cause number 545-03 and is styled David
Richardson, Individually, as the Representative for All Wrongful Death Beneficiaries, and as an Heir
at Law and the Representative of the Estate of John Richardson, Deceased v. Gladewater Healthcare
Center, in its Assumed or Common Name; Nexion Health at Gladewater, Inc.; Nexion Health, Inc.;
Nexion Health Management, Inc.; Nexion Health at Texas, Inc.; Nexion Health Leasing, Inc.; Nexion
Health Realty, Inc.; Darlene Maloney, Individually; Bruce Henshaw, Individually; and Donna
Albright, Individually.
3. Kirley is identified as president and CEO of Nexion Health, Inc., Bolt is identified as
executive vice president and CFO of Nexion Health, Inc., and Riner is identified as senior vice
president of operations for Nexion Health, Inc. 
4. Excerpts of Clark's August 29, 2008, deposition were attached as exhibits to Plaintiff's
response to Relators' motions to quash and for protective orders.
5. Though we are not called on to decide whether the trial court's order of reference is in any
way objectionable under Rule 171 of the Texas Rules of Civil Procedure, we note that the order
contains suspect language that may be interpreted to forego the trial court's review of the special
master's recommendations. Rule 171 contemplates the trial court's review of the special master's
report:


 The order of references to the master may specify or limit his powers, and may direct
him to report only upon particular issues, or to do or perform particular acts, or to
receive and report evidence only and may fix the time and place for beginning and
closing the hearings, and for the filing of the master's report. Subject to the
limitations and specifications stated in the order, the master has and shall exercise the
power to regulate all proceedings in every hearing before him and to do all acts and
take all measures necessary or proper for the efficient performance of his duties under
the order.

 . . . .

 The court may confirm, modify, correct, reject, reverse or recommit the report, after
it is filed, as the court may deem proper and necessary in the particular circumstances
of the case.


Tex. R. Civ. P. 171. The special master's report is to be subject to the trial court's review. See
Hebisen v. Clear Creek Indep. Sch. Dist., 217 S.W.3d 527, 535 (Tex. App.--Houston [14th Dist.]
2006, no pet.) (citing legislative concern as expressed in Tex. House Judicial Affairs Comm.,
Interim Report: Parajudicial Personnel, 67th Leg., at 20 (1980) that special masters "must
never become independent of the judges they serve"); see generally Simpson v. Canales, 806 S.W.2d
802, 811-12 (Tex. 1991).
6. We add that we may issue all writs necessary to enforce our jurisdiction even against a
person whose capacity is not listed in Section 22.221. See Tex. Gov't Code Ann. § 22.221(a)
(Vernon 2004); In re Washington, 7 S.W.3d 181, 183 (Tex. App.--Houston [1st Dist.] 1999, orig.
proceeding). Relators do not contend that a writ of mandamus against the special master, here, is
a writ of mandamus necessary to enforce our jurisdiction. 
7. In their petition, Relators claim that we have jurisdiction because they seek "relief from an
order issued by a district judge in the Court of Appeals district." The only order of the trial court is
that order of reference to the special master, and we see no elements of that order being attacked by
Relators. The order being attacked is the order of the special master concerning the depositions. 
Relators are reminded of their duty to this Court to be accurate in their recitation of facts.
8. We do not endorse such an argument or pass on the merits of such a contention. We only
mention the possible argument to point out that Relators have limited their petition to seeking a writ
of mandamus against Davis rather than the trial court that appointed Davis as special master.


tierrez v. State, 8 S.W.3d 739, 749-50 (Tex. App.-Austin 1999, no pet.). The statute controls
over the more restrictive reading of Tex. R. Evid. 404 and 405 and has been interpreted broadly to
allow the state to introduce evidence describing the circumstances surrounding the alleged acts. See
Ernst v. State, 971 S.W.2d 698 (Tex. App.-Austin 1998, no pet.). We conclude counsel's failure to
object to admissible evidence did not constitute ineffective assistance.

 Wilson further contends that trial counsel's introduction of his past criminal history-when
the acts involved were so remote as to be inadmissible-justifies a finding that counsel was
constitutionally inadequate. When Wilson took the stand, his counsel asked him about four prior
arrests, once for an insufficient fund check, twice for unlawfully carrying a weapon, and once for
possession of marihuana (for which he successfully served community supervision and paid a fine). 
Counsel went into great detail about these offenses, showing that each would have been a
misdemeanor, and then eliciting testimony from Wilson that he believed would exonerate him. 
Because the door had been opened, the State went through it and then explored the prior offenses
as well. Each of the arrests had occurred over ten years earlier. 

 Appellate counsel argues that Tex. R. Evid. 609(b) would have absolutely prevented the
admission of any of this evidence. Tex. R. Evid. 608 provides, in the context of reputation evidence
of character, that specific instances of conduct cannot be inquired into on cross-examination except
as set out in Rule 609. Rule 609 provides that evidence of a witness's prior conviction shall be
admitted for purposes of impeachment if the crime was a felony or a crime of moral turpitude and
the court determines the probative value of admitting the evidence of the conviction outweighs its
prejudicial effect. Tex. R. Evid. 609(a). However, such evidence is not admissible if more than ten
years has elapsed since the date of the conviction or the witness's release from confinement,
whichever is later, unless the court determines, in the interest of justice, that the probative value of
the conviction supported by specific facts and circumstances substantially outweighs its prejudicial
effect. Tex. R. Evid. 609(b). Three of the events involved were arrests, not convictions, and the
marihuana possession conviction was a misdemeanor. (4) Thus, this evidence was not admissible under
this rule. Generally, a witness's credibility cannot be impeached with prior acts of misconduct unless
the misconduct resulted in a final conviction of a felony offense or a crime of moral turpitude. See
Tex. R. Evid. 608(b), 609(a); Veteto v. State, 8 S.W.3d 805, 815 (Tex. App.-Waco 2000, pet. ref'd). 
Neither situation existed in this case. (5) 

 The State does not contend there is any basis on which it could have introduced this evidence
itself. Rather, it argues simply that counsel was otherwise competent and that this single error does
not constitute ineffective assistance. 

 We conclude that the introduction of this otherwise inadmissible evidence by defense counsel
was ineffective assistance of counsel. The remaining question is whether the error is such that it
caused the representation as a whole to fall below the standard of prevailing professional norms and
that there is a reasonable probability that, but for his attorney's deficiency, the result of the trial
would have been different. 

 In making this determination, as far as strategic or tactical reasons for counsel's action or
inaction, in the absence of direct evidence of counsel's reasons for the challenged conduct, an
appellate court is to assume a strategic motivation if any can be imagined. Garcia, 57 S.W.3d at
441. Further, we are not to conclude the challenged conduct constitutes deficient performance unless
the conduct was so outrageous that no competent attorney would have engaged in it. Id.; see
Thompson, 9 S.W.3d at 814.

 With the exception of this sequence of questions, counsel has directed us to no apparent
misdeed by trial counsel. Our review of the record indicates that counsel did make an effort to
present evidence in support of his client and that his conduct of voir dire and his examination of
witnesses were reasonably competently performed. 

 The question before this court is whether defense counsel's decision to introduce otherwise
inadmissible testimony about the defendant's criminal history can meet some amorphous test of
tactical value. It does not. Often a defendant may attempt to introduce such evidence in an attempt
to show the jury that he or she is being honest and straightforward in his or her defense when he or
she is aware the state will introduce the evidence. However, there is no conceivable reason for
defense counsel to introduce such evidence when it could not be introduced by the state. We further
conclude this is so outrageous an act that no competent attorney would have engaged in it. We
conclude that in this instance, there is no imaginable reason for its introduction. On this point, then,
we find it unnecessary to require the defendant to wait until some possible habeas claim for this issue
to be adequately addressed.

 The first prong of Strickland has been met. The remaining question is whether this error is
such that there is a reasonable probability that, but for his attorney's deficiency, the result of the trial
would have been different. 

 In light of our review of the remainder of the trial proceedings, counsel's conduct of voir dire,
and the trial, as well as from our review of the evidence of Wilson's guilt that was properly presented
to the jury, we cannot conclude there is a reasonable probability that counsel's deficiencies as set out
above were such as to allow us to find a reasonable probability that without the deficiencies, the
result would have been different. The contention of error is overruled.

 The judgment is affirmed.




 Ben Z. Grant

 Justice


Date Submitted: March 12, 2002

Date Decided: May 16, 2002


Do Not Publish
1. Wilson had been simultaneously indicted under three additional cause numbers for other
sexual assaults. Handwritten on a "notice of resetting" is a comment indicating the other three cases
were dismissed because of double jeopardy.
2. There is evidence that by using a direct injection into the penis, he can sustain an erection.
3. Fondling falls within the category of indecency with a child by contact and is prosecutable
under Tex. Pen. Code Ann. § 21.11 (Vernon Supp. 2002). Penetration belongs under the heading
of aggravated sexual assault, prosecutable under Tex. Pen. Code Ann. § 22.021 (Vernon Supp.
2002). 
4. Misdemeanor marihuana possession has never been treated as a crime of moral turpitude in
Texas. See In re Lock, 54 S.W.3d 305 (Tex. 2001); Hernandez v. State, 976 S.W.2d 753, 756 (Tex.
App.-Houston [1st Dist.]), pet. denied, 980 S.W.2d 652 (Tex. Crim. App. 1998). 
5. An exception to this general rule also arises when the defendant, during direct examination,
leaves a false impression as to the extent of either his (1) arrests, (2) convictions, (3) charges, or (4)
"trouble" with the police. Prescott v. State, 744 S.W.2d 128, 131 (Tex. Crim. App. 1988); Turner
v. State, 4 S.W.3d 74, 79 (Tex. App.-Waco 1999, no pet.); Anaya v. State, 988 S.W.2d 823, 825
(Tex. App.-Amarillo 1999, no pet.). That exception does not apply in this case.